UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

―――――――――――――――――――――

OMNI ELEVATOR CORPORATION and
CHRISTIAN GOETTING,

                        Plaintiffs,

     -vs-

INTERNATIONAL UNION OF
ELEVATOR CONSTRUCTORS and its
LOCAL 27 AFFILIATE; ALAN
ROTHFUSS; CRANE-HOGAN
STRUCTURAL SYSTEMS, INC.;
TRUSTEES OF THE NATIONAL
ELEVATOR INDUSTRY PENSION,
HEALTH BENEFIT, EDUCATIONAL,
ELEVATOR INDUSTRY WORK
PRESERVATION FUNDS, ELEVATOR
CONSTRUCTORS ANNUITY AND
401(K) RETIREMENT PLAN;
DELAWARE ELEVATOR, INC.,

                    Defendants.

―――――――――――――――――――――

DECISION AND ORDER
19-CV-6778-CJS

## APPEARANCES

| | |
|---|---|
| For Plaintiffs: | John M. Regan, Jr., Esq.<br>Dibble & Miller, P.C.<br>55 Canterbury Rd.<br>Rochester, NY 14607-3436 |
| For Defendants International Union of Elevator Constructors and its Local 27 Affiliate; Alan Rothfuss; the Trustees of the National Elevator Industry Pension, Health Benefit, Educational, Elevator Industry Work Preservation Funds; and the Elevator Constructors Annuity and 401(k) Retirement Plan: | Jennifer A. Clark, Esq.<br>Blitman & King LLP<br>Franklin Center, Suite 300<br>443 North Franklin St.<br>Syracuse, NY 13204 |
| For Defendant Crane-Hogan Structural Systems, Inc.: | Daniel P. Adams, Esq.<br>Adams Bell Adams, P.C. |

28 East Main St., Suite 600
Rochester, NY 14614

For Defendant Delaware Elevator, Inc.:          Delaware Elevator, Inc., *Pro Se*

## INTRODUCTION

In this action, originally commenced in state court, Omni Elevator Corporation ("Omni") and Christian Goetting ("Goetting") (collectively, "Plaintiffs") seek to enjoin enforcement of three money judgments obtained against them by defendants International Union of Elevator Constructors and its Local 27 Affiliate; Alan Rothfuss; the Trustees of the National Elevator Industry Pension, Health Benefit, Educational, Elevator Industry Work Preservation Funds;[1] and the Elevator Constructors Annuity and 401(k) Retirement Plan (collectively, "Funds/Union Defendants"), and defendant Crane-Hogan Systems, Inc. ("Crane-Hogan"). The Funds/Union Defendants timely filed a Notice of Removal, ECF No. 1, asserting that the Court has original jurisdiction over this action, *see* 28 U.S.C. § 1441(a), and that Plaintiffs' claims are completely preempted by the Labor Management Relations Act ("LMRA"), 28 U.S.C. § 141 *et seq*. Plaintiffs have filed a Motion to Remand, ECF No. 4, which also seeks a temporary restraining order ("TRO")/ preliminary injunction pursuant to Fed. R. Civ. P. 65 and an expedited hearing pursuant to W.D.N.Y. Local Rule 7.1(d). For the reasons discussed below, Plaintiffs' Motion to Remand is DENIED; the request for injunctive relief is DENIED; and the request for an expedited hearing is DENIED. In addition, the Court finds that the Motion to Dismiss, ECF No. 8, filed by the Funds/Union Defendants and the Cross-Motion to Dismiss filed by Crane-Hogan, ECF No. 10, should be CONVERTED to motions for summary judgment under Fed. R. Civ. P. 56.

---

[1] The correct names of the funds appear to be the National Elevator Industry Pension Fund, National Elevator Industry Health Benefit Plan, National Elevator Industry Educational Plan, and the Elevator Industry Work Preservation Fund. *See* National Elevator Industry, Inc., www.neii.org/contact.cfm.

## BACKGROUND

In considering the Motion to Remand, the Court accepts as true all relevant allegations in Plaintiffs' state-court Amended Complaint and construes all factual ambiguities in Plaintiffs' favor. *Colacino v. Davis*, No. 19 CV 9648 (VB), 2020 WL 3959209, at *1 (S.D.N.Y. July 13, 2020) (citing *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 391 (S.D.N.Y. 2006)). The Court may also consider materials outside the Amended Complaint, "'such as documents attached to a notice of removal[2] or a motion to remand that convey information essential to the court's jurisdictional analysis.'" *Id.* (quoting *Romero v. DHL Express (U.S.A), Inc.*, No. 15-CV-4844 (JGK), 2016 WL 6584484, at *1 (S.D.N.Y. Nov. 7, 2016), *aff'd sub nom. Romero v. DHL Express (USA), Inc.*, 719 F. App'x 80 (2d Cir. 2018)).

### I.      The Parties

The National Elevator Industry Pension Fund, National Elevator Industry Health Benefit Plan, National Elevator Industry Educational Plan, Elevator Industry Work Preservation Fund, and Elevator Constructors Annuity and 401(k) Retirement Plan (collectively, "the Funds") are employee benefit plans organized under the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 88 Stat. 829, 29 U.S.C. § 1001 *et seq.* The Funds are financed by payments, or "contributions," made by employers under the terms of their collective bargaining agreements with the International Union of Elevator Constructors ("IUEC").

The IUEC is an unincorporated association and labor organization in an industry affecting commerce as defined in § 2(5) the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141, *et seq.*, as amended. Alan Rothfuss ("Rothfuss") is the business manager/financial

---

[2] The Funds and the Union Defendants have attached 140 pages of Exhibits (ECF No. 1-1) to the Notice of Removal (ECF No. 1), including documents filed in the state court action (Exhibits "A"-"I"); the two out-of-district judgments against Plaintiffs and related documents (Exhibits "J"-"L"); and Crane-Hogan's consent to removal (Exhibit "M"). The Amended Complaint is attached as Exhibit "C."

secretary of IUEC's Rochester-based union affiliate, Local 27. Local 27 is an unincorporated labor association as defined in LMRA § 2(5).  The IUEC, Local 27, and Rothfuss are collectively referred to as the "Union Defendants" in this Decision and Order.

Goetting is the owner and president of Omni, which employs workers to repair, maintain, and install elevators. Omni is the successor in interest to a domestic corporation known as The Elevator Guild ("the Guild") formed by Goetting. Omni and the Guild at all relevant times have had a collective bargaining agreement ("CBA") with the Union.  *See* Amended Complaint ("Am. Compl."), ¶¶ 4-5, 18-19, 23-24, 26, 35-36, Exhibit "C", ECF No. 1-1.

## II.    The Judgments Against Plaintiffs

On two occasions, the Funds commenced actions in the Eastern District of Pennsylvania pursuant to ERISA Sections 502(g)(2) and 515, 29 U.S.C. §§ 1132(g)(2)(A) and 1145.  The Funds sued the Guild for failing to pay contributions owed under the CBA and sued Goetting, personally, for his failure to remit the monies over which he exercised fiduciary control.

The first ERISA suit was brought on October 6, 2009, following the Guild's failure to pay contributions for the period of February 2009, through May 2009. On April 12, 2010, the United States District Court for the Eastern District of Pennsylvania awarded the Funds a default judgment against the Guild and Goetting in the amount of $25,653.96. *See* Dkt. 8, *Trustees of the Nat'l Elevator Industry Pension, Health, Benefit, Educational, Elevator Industry Work Preservation Funds, Elevator Constructors Annuity and 401(k) Retirement Plan v. The Elevator Guild, Inc., et al.*, No. 09-4578 (E.D. Pa. Apr. 10, 2010) ("*Elevator Guild I*"), Exhibit "L", ECF No. 1-1. In accordance with 28 U.S.C. § 1963, the judgment was registered in this Court on July 26, 2010. Plaintiffs never appealed this judgment or moved to vacate it.

On April 29, 2011, the Funds instituted another ERISA action in the Eastern District of Pennsylvania against the Guild, seeking to recover delinquent contributions due under the CBA. Default judgment was entered against the Guild for its failure to defend. The Funds also asserted an ERISA action against Goetting for breach of his fiduciary obligations.  On January 23, 2013, the district court granted the Funds' unopposed motion for summary judgment against Goetting. *Trustees of Nat. Elevator Indus. Pension, Health Ben., Educ., Elevator Indus. Work Pres. Funds v. Elevator Guild, LLC*, No. CIV.A. 11-2870, 2013 WL 271888, at *1 (E.D. Pa. Jan. 23, 2013) (Rufe, D.J.) ("*Elevator Guild II*"); *see also* Exhibit "L", ECF No. 1-1.  Judgment in the amount of $184,538.45 was entered against the Guild and Goetting on May 30, 2014. Plaintiffs never appealed or otherwise challenged this judgment, which was registered in this Court on July 31, 2014.

Plaintiffs allege in their Amended Complaint that on an unspecified date, Crane-Hogan obtained a judgment in New York State Supreme Court, Monroe County against the Guild in the amount of "approximately $300,000." Am. Compl. ¶ 35, Exhibit "C", ECF No. 1-1. Omni eventually became liable for this judgment as the Guild's successor in interest. *Id.* Based on the chronology of events detailed in the Amended Complaint, it appears that this judgment occurred sometime in 2016 or later. *See id.* ¶¶ 34-35 (noting that "one day in 2016," Goetting was locked out of the Crane-Hogan job and was unable to complete it; Crane-Hogan hired another company to complete the job and subsequently sued Goetting and the Guild to recover the cost of hiring the other company).

### III.    Plaintiffs' State Court Action Against the Union and the Funds

On September 19, 2019, Plaintiffs commenced an action in New York State Supreme Court, County of Monroe (Index No. E2019-008965). In their Amended Complaint, Plaintiffs

5

allege that on unspecified occasions between 2007 and 2018, Rothfuss "engaged in a pattern of outrageous and conscious shocking behavior designed to disrupt and destroy Plaintiffs' business and livelihood," Am. Compl. ¶ 2, including making false and defamatory statements about Goetting and attempting to persuade Omni's customers to cease doing business with it. *See id.* ¶¶ 26-28, 33-36, 40, 43-44.

The Amended Complaint purports to assert one cause of action for equitable indemnification against the Union Defendants. *Id.* § IV, ¶¶ 46-50. As relief, Plaintiffs seek a "temporary restraining order, preliminary injunction enjoining further enforcement of the relevant judgment against Plaintiffs . . . during the pendency of [the] action," and punitive damages. *Id.* § V.

## DISCUSSION

### I.   Plaintiffs' Motion to Remand

#### A.  Procedural Issues

Crane-Hogan has executed a consent to remand. ECF No. 1-1 at 139-40. Defendant Delaware Elevator Inc. ("Delaware") has not appeared and indeed, as the Funds/Union Defendants note, it is unclear how it is connected to Plaintiffs' lawsuit and why it was named. In any event, Delaware has not consented to removal.  "Although there is no express statutory requirement that all defendants either join the petition for removal or consent to such removal, there is widespread agreement among the district courts, including those in the Second Circuit, that 'all named [defendants] over whom the state court acquired jurisdiction must join in the removal petition for removal to be proper.'" *Ell v. S.E.T. Landscape Design, Inc.*, 34 F. Supp. 2d 188, 193 (S.D.N.Y. 1999) (internal citations omitted). "This 'rule of unanimity' applies regardless of whether the removing parties predicate federal subject matter jurisdiction on diversity or

federal question." *Borden v. Blue Cross & Blue Shield of W. New York*, 418 F. Supp. 2d 266, 270 (W.D.N.Y. 2006) (citing *Ell*, 34 F. Supp. 2d at 194 (citing *Hewitt v. City of Stanton*, 798 F.2d 1230, 1232 (9th Cir. 1986)). Courts have excused compliance with the "rule of unanimity" where, for example, "(1) the non-joining defendants have not been served with service of process at the time the removal petition is filed; (2) the non-joining defendants are merely nominal or formal parties; and (3) the removed claim is a separate and independent claim as defined by 28 U.S.C. § 1441(c)." *Ell*, 34 F. Supp. 2d at 194 (citing *Courtney v. Benedetto*, 627 F. Supp. 523, 526 (M.D.La.1986); 14C Charles A. Wright, Arthur P. Miller & Edward H. Cooper, <u>Federal Practice and Procedure</u> § 3731)); *see also*, *e.g.*, *In re Air Crash at Belle Harbor, NY, on Nov. 12, 2001*, No. 02 CIV. 6746 (JFK), 2003 WL 21032034, at *6 (S.D.N.Y. May 5, 2003) ("It is well-settled that a removing defendant need not obtain the consent of non-served defendants to remove an action. This only makes sense considering that the court cannot exert personal jurisdiction over a non-served defendant.") (citing *Varela v. Flintlock Constr., Inc.*, 148 F. Supp. 2d 297, 300 (S.D.N.Y. 2001); *Ell*, 34 F. Supp. 2d at 194); *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 384 (S.D.N.Y. 2006) ("Where a non-consenting defendant is not properly served and/or joined, an exception to this requirement exists. . . . If the non-consenting defendant was not properly served, then that defendant is not deemed as being part of the action, and therefore, removal cannot be denied on the ground that there was less than full consent to removal among the named defendants.") (citing *White v. Bombardier Corp.*, 313 F. Supp. 2d 1295, 1298 (N.D.Fla. 2004)). However, there is an exception to the unserved defendant exception to the unanimity rule: "[I]f the non-joining defendant is a resident of the forum state, failure to serve the resident defendant does not justify removal by the non-resident defendant." *In re Air Crash at Belle Harbor*, 2003 WL 21032034, at *6 (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 540-41 (1939)).

That exception "is focused on instances where federal jurisdiction is based on diversity of citizenship. . . ." *Id.*

The Funds/Union Defendants assert that Delaware has not been properly served with process. ECF No. 1 at 12. Accordingly, they argue, Delaware's consent is not required. *Id.* The Funds/Union Defendants have not submitted any proof to support their assertion about non-service on Delaware. Notably, however, Plaintiffs have not objected to removal on the basis that the exception to the non-served defendant rule applies. Where, as here, federal jurisdiction is based on the existence of a federal question, *see* 28 U.S.C. § 1331, and removal was effected pursuant to 28 U.S.C. § 1441(a), courts have found that the exception to the non-served defendant exception has no application. *See*, *e.g.*, *In re Air Crash at Belle Harbor*, 2003 WL 21032034, at *6. Accordingly, the Court finds that Delaware's failure to consent to or join in removal does not make removal improper.

### B.  Legal Standards

A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). "'[F]ederal courts are courts of limited jurisdiction' and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (quotation omitted). Thus, the Supreme Court has held, the "statutory procedures for removal are to be strictly construed[,]" *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) (citations omitted). "The defendant, as the party seeking removal and asserting federal jurisdiction, bears the burden of demonstrating that the district court has original jurisdiction." *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 145 (2d Cir. 2017) (citation omitted).

District courts have original federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *see also* U.S. Const. art. III, § 2 (extending the judicial power of federal courts to "all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority"). A case arises under federal law where "'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27-28 (1983)). Under the well-pleaded complaint rule, a plaintiff is "free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available." *Marcus v. AT & T Corp.*, 138 F.3d 46, 52 (2d Cir.1998).

However, the "artful pleading doctrine," "an independent corollary of the well-pleaded complaint rule," prevents a plaintiff from "omitting to plead necessary federal questions in a complaint" in order to defeat federal jurisdiction. *Franchise Tax Bd. of Cal.*, 463 U.S. at 22 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (citation and internal quotation marks omitted)). The artful pleading doctrine "empowers courts to look beneath the face of the complaint to divine the underlying nature of a claim, to determine whether the plaintiff has sought to defeat removal by asserting a federal claim under state-law colors, and to act accordingly." *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am., IAMAW Dist. Lodge 4*, 132 F.3d 824, 831 (1st Cir. 1997) (upholding removal by union based on complete preemption and denying motion for remand). Courts thus may determine whether the plaintiff has attempted to defeat removal by "cloth[ing] [a federal claim] in state garb." *Travelers Indem. Co. v. Sarkisian*, 794 F.2d 754, 758 (2d Cir.1986). "If such is the case, the reviewing court will

'uphold removal even though no federal question appears on the face of the complaint.'" *Romano v. Kazacos*, 609 F.3d 512, 519 (2d Cir. 2010) (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998)).

A significant exception to the well-pleaded complaint rule permits removal "when a federal statute 'wholly displaces the state-law cause of action,' such that the claim, 'even if pleaded in terms of state law, is in reality based on federal law.'" *McCulloch Orthopaedic Surgical Servs., PLLC*, 857 F.3d at 145 (quoting *Davila*, 542 U.S. at 207-08).  To withstand a motion to remand, the removing defendant need only demonstrate that there is "a single preempted claim to establish a basis for the exercise of federal subject matter jurisdiction." *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 331 n.11 (2d Cir. 2011).

### C.  Overview of the Parties' Arguments

Plaintiffs assert that removal is improper because "a) the cause of action in the Amended Complaint sounds entirely in state law; b) questions regarding the effect and enforceability of the federal court judgments held by the TRUSTEES do not, in and of themselves, raise a federal question so as to invoke the jurisdiction of this Court[;] rather, those questions are addressed entirely with reference to the New York Civil Practice Law and Rules Articles 50 [Judgments Generally] and 54 [Enforcement of Judgments Entitled to Full Faith and Credit]; and c) the important underlying question of whether Defendants UNION and ROTHFUSS can be made defendants in the state action at all is also a question peculiarly and solely of New York State law that this Court cannot effectively address at all." Plaintiffs' Declaration at 2 (capital letters in original), ECF No. 4-1.  However, the only point on which Plaintiffs have offered any argument is the one in subsection (b). *See* Plaintiffs' Memorandum of Law at 6, ECF No. 4-3. According to Plaintiffs, "the sole issue with respect to the federal court judgments relevant to this case is

whether they are properly enforceable in New York, under New York's law, to the extent they were judgments obtained by default in appearance, or whether they are subject to defenses— also under New York's law—such as personal jurisdiction. . . ." *Id.* (citation to record omitted). Plaintiffs submit that the "federal issues underlying those judgments have already been determined[ ] and cannot be re-determined either by the state court or by this Court upon a removal." *Id.*

In opposing remand, the Funds/Union Defendants argue that the Court has original jurisdiction over Plaintiffs' claims and that they are completely preempted by Sections 301 and 303 of the LMRA. *See* Funds/Union Defendants' Memorandum of Law in Opposition to Remand, Point I at 3-9, ECF No. 11-3. The Funds/Union Defendants contend that Plaintiffs are, by artful pleading, improperly attempting to defeat jurisdiction by dressing a federal-law claim in state-law clothing. *See id.* at 5-9. They further assert that any claims not completely preempted by the LMRA may be heard by this Court pursuant to its authority under the supplemental jurisdiction statute, 28 U.S.C. § 1367(a). *See id.* at 9-11.

### D. Analysis

#### 1. The Amended Complaint Is Preempted Under LMRA Section 301

Section 301(a) of the LMRA provides as follows:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Section 301 was intended to "fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985)).

The Supreme Court has observed that "[LMRA] § 301 has such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019) (quoting *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987)); *see also Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005) (noting that Section 301 of the LMRA has been found to have "the requisite extraordinary preemptive force to support complete preemption") (citing *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 558-62 (1968)). "[I]f the state claims put forward by plaintiffs are preempted by § 301 of the LMRA, 'the action may properly be removed to the federal courts, even when the plaintiff's complaint does not itself include a federal cause of action.'" *Foy v. Pratt & Whitney Grp.*, 127 F.3d 229, 232-33 (2d Cir. 1997) (quoting *Shafii v. British Airways PLC*, 83 F.3d 566, 569 (2d Cir. 1996) (citing *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 258-64 (1994). In other words, "Section 301 of the LMRA . . . creates an exception to the well-pleaded complaint rule." *Radcliff v. San Diego Gas & Elec. Co.*, No. 3:20-CV-01555-H-MSB, --- F. Supp. 3d ---, 2021 WL 532258, at *2 (S.D. Cal. Feb. 12, 2021) (citing *Curtis*, 913 F.3d at 1151-52).

In determining whether Section 301 of the LMRA preemption applies, courts "begin with the elements of plaintiffs' state law claim." *Foy*, 127 F.3d at 233 (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988)). Next, courts determine whether the "'resolution of a state-law claim depends on an *interpretation* of the collective-bargaining agreement. . . .'" *Id.* (quoting *Hawaiian Airlines*, 512 U.S. at 260-52; further citation omitted; emphasis in original).  If so, then the claim is preempted. *Id.* (citations omitted). "However, 'the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not

require the claim to be extinguished." *Id.* (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994); further citation omitted).

The Funds characterize Plaintiffs' Amended Complaint as asserting claims of "tortious interference with business relations, misappropriation of business and defamatory statements vis-à-vis third parties[.]" Funds/Union Defendants' Memorandum of Law in Opposition to Remand at 2, ECF No. 11-3. While the Amended Complaint has labeled various statements by Rothfuss as "defamatory" and has alleged that Rothfuss has performed actions intended to interfere in Plaintiffs' current or future business relationships, it does not explicitly assert causes of action for specific torts such as defamation, tortious interference with contract, or tortious interference with prospective business relations. At the same time, the Amended Complaint seeks punitive damages, see Am. Compl. § V (4), ECF No. 1-1, which would require Plaintiffs to plead and prove a tort claim as well as make an extremely demanding showing. *See Rocanova v. Equitable Life Assurance Soc'y of U.S.*, 83 N.Y.2d 603, 613 (1994). That said, "the plaintiff is the master of the complaint," *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998), and the Amended Complaint itself purports to state only one cause of action: "equitable indemnification" against Rothfuss, IUEC, and Local 27. *See* Am. Compl. § IV, ¶¶ 46-50, Exhibit "C", ECF No. 1-1.  Plaintiffs allege that they have "incurred obligations" to the Funds and Crane-Hogan "because of the malicious, malevolent and otherwise wrongful conduct" of Rothfuss, *id.* ¶ 47; that IUEC and Local 27 are liable for Rothfuss' tortious conduct under the doctrine of *respondeat superior*, *id.* ¶ 48; and that IUEC, Local 27, and Rothfuss are therefore "liable in equity to indemnify Plaintiffs for any obligations owed" to the Funds or Crane-Hogan, *id.* ¶ 49.

The Funds have not addressed the cause of action for equitable indemnification which, under New York law, is "'a separate substantive cause of action, independent of the underlying

wrong[s],' and not dependent upon the existence of any other claims[.]" *Murray Bresky Consultants, Ltd. v. New York Comp. Manager's Inc.*, 968 N.Y.S.2d 595, 600-01 (3d Dep't 2013) (quoting *McDermott v. City of N.Y.*, 50 N.Y.2d 211, 218 (1980); first alteration in original). "The principle of equitable indemnification, also known as common-law indemnification, allows a *non-culpable party* who has been compelled to make a payment 'to shift the entire burden' to the liable party and obtain full reimbursement." *Arch Ins. Co. v. Harleysville Worcester Ins. Co.*, No. 13 CIV. 7350 DLC, 2014 WL 3377124, at *7 (S.D.N.Y. July 7, 2014) (quoting *Frank v. Meadowlakes Dev. Corp.*, 6 N.Y.3d 687, 691 (2006); emphasis supplied). Common-law indemnification "is a quasi-contract claim in which a contract is implied in law in order to avoid unjust enrichment, accomplished by shifting a loss by 'placing the obligation where in equity it belongs[.]'" *Murray Bresky Consultants, Ltd.*, 968 N.Y.S.2d at 600 (quoting *McDermott*, 50 N.Y.2d at 217). "[T]he key element of a common-law cause of action for indemnification is not a duty running from the indemnitor to the injured party, but rather is 'a separate duty owed the indemnitee by the indemnitor[.]'" *Raquet v. Braun*, 90 N.Y.2d 177, 183 (1997) (quoting *Mas v. Two Bridges Assoc.*, 75 N.Y.2d 680, 690 (1990)).

"The duty that forms the basis for the liability arises from the principle that 'everyone is responsible for the consequences of his own negligence, and if another person has been compelled . . . to pay the damages *which ought to have been paid by the wrongdoer*, they may be recovered from him[.]" *Konsky v. Escada Hair Salon, Inc.*, 978 N.Y.S.2d 342, 344 (2d Dep't 2014) (quoting *Oceanic Steam Nav. Co. Ltd. v. Compania Transatlantica Espanola*, 134 N.Y. 461, 468 (1892); ellipsis in original; emphasis supplied). "Since the predicate of common-law indemnity is vicarious liability *without actual fault* on the part of the proposed indemnitee, it follows that a party who has itself actually participated to some degree in the wrongdoing cannot

receive the benefit of the doctrine." *Trustees of Columbia Univ. v. Mitchell/Giurgola Assoc.*, 492 N.Y.S.2d 371, 375 (1st Dep't 1985) (citing *Rock v. Reed-Prentice*, 39 N.Y.2d 34, 39 (1976); emphasis supplied).

Thus, in order to prove a claim for common-law or equitable indemnification, Plaintiffs must establish that they have no liability whatsoever for the judgments obtained by the Funds against them in the Eastern District of Pennsylvania and by Crane-Hogan in Monroe County Supreme Court, and that, by operation of law, the Union is instead solely liable for those judgments. If Plaintiffs have any degree of liability for the judgments, then they cannot avail themselves of the benefit of the doctrine. *See*, *e.g.*, *Dreyfus v. MPCC Corp.*, 3 N.Y.S.3d 365, 366 (2d Dep't 2015) (third-party defendant "established its *prima facie* entitlement to judgment as a matter of law dismissing the third-party cause of action for common-law indemnification by submitting evidence which demonstrated that any liability of the defendant third-party plaintiff to the plaintiffs would be based on [defendant third-party plaintiff's] actual wrongdoing in failing to properly maintain the subject premises, not on any theory of vicarious liability for [third-party defendant]'s conduct) (citing *Guzman v. Haven Plaza Hous. Dev. Fund Co.*, 69 N.Y.2d 559, 568-69 (1987); other citations omitted).

As discussed below, courts already have determined that Plaintiffs are one-hundred percent liable for the Funds' judgments.  In *Elevator Guild II*, for instance, the district court's memorandum and order illustrates that this determination was based on its *interpretation* of the CBA's terms. As the district court observed, the Funds brought suit "to recover delinquent contributions from The Elevator Guild, Inc. . . . which are allegedly due *under the terms of a Collective Bargaining Agreement* to which the Guild is a signatory." *Elevator Guild II*, 2013 WL 271888, at *1 (emphasis supplied). The district court in *Elevator Guild* discussed at length

various provisions of the June 12, 2007 CBA, noting that the following facts were "uncontested" by virtue of Goetting's failure to respond to the Funds' requests for admissions and failure to respond to the summary judgment motion: Under the CBA signed by Goetting as "owner and/or officer of the Guild," the Guild was to remit contributions to the Funds for each hour worked by any employee of the Guild covered by the CBA; the CBA, in conjunction with the Agreements and Declaration of Trust to which the Guild was bound as a party to the CBA, required the Guild to report to the Funds, by the 15th day of each month, the number of hours worked by its employees in the prior month and pay the contributions due to the Funds at that time; the Agreements and Declarations of Trust provide that legal action may be taken to collect all contributions due to the Funds should the employers fail to pay, as well as liquidated damages authorized by ERISA, interest, and attorneys' fees and costs; the Guild employed individuals covered by the CBA during the effective period of the CBA (July 9, 2007 through July 8, 2012); Goetting exercised authority and control over payroll deductions and payment of contributions to the Funds for those employees, as well as the payment of other business expenses; from July 2007 through November 2010, Goetting signed and submitted to the Funds the required reports regarding the number of hours worked by the Guild employees, but he failed to remit the corresponding payments for many of those months; and, since November 2010, the Guild failed to report hours worked by its covered employees and failed to remit payments. *Elevator Guild II*, 2013 WL 271888, at *2 (footnotes omitted).

To make the determinations required under ERISA as to "whether Goetting's failure to remit contributions to the Funds affected plan assets, and [ ] whether Goetting 'either exercised discretionary authority or control in the management of the plan or if he exercised any authority or control over the management or disposition of the plan's assets,' *id.* at *3, the district court

examined provisions of the CBA, *see id.*  Among other things, the district court found that "[b]ecause the CBA clearly states that '[t]itle to all monies paid into and/or due and owing . . . shall vest in and remain exclusively in the Trustees of said Funds,' . . . the Funds have demonstrated that title to the unpaid contributions owed to the Funds were vested assets of the Funds from the time they were due and owing, pursuant to the terms of the CBA and the trust documents, and therefore were plan assets under ERISA." *Id.* (footnote omitted; ellipsis in original); *see also id.* at *4 (interpreting the CBA and Funds' documents to mean that "[a] failure to timely remit the owed plan assets is a breach of fiduciary duty under the plan documents," and therefore the Funds established a breach of fiduciary duty by Goetting).

As clearly demonstrated by the district court's order in *Elevator Guild II*, determining Plaintiffs' degree of fault, if any, for the Funds' judgment against them required not merely reference to, but "an *interpretation* of," the pertinent CBA. *Foy*, 127 F.3d at 233 (quoting *Hawaiian Airlines*, 512 U.S. at 260-52; further citation omitted; emphasis in original). While the judgment in *Elevator Guild I* was obtained following the Funds' motion for default, and there is no memorandum and order as there is in *Elevator Guild II*, the same conclusion is required. The categories of damages awarded in *Elevator Guild I* essentially mirror those in *Elevator Guild II*—both judgments principally consist of "unpaid" or "owed" contributions and "estimated" contributions. *See* ECF No. 1-1 at 63, 64. Plaintiffs cannot plausibly argue that the damages awarded against them in *Elevator Guild I* were *not* based on an interpretation of the relevant provisions of the CBA in effect between them and the Funds that required Plaintiffs to remit contributions for covered employees.  Notably, the judgments finding Plaintiffs liable have not been overturned. Thus, in order to prove an element of their equitable indemnification claim, Plaintiffs would have to establish that the district court's *interpretation* of the CBA was incorrect.

Although Plaintiffs posit that interpretation of the CBA is not required because the Union is the actual wrongdoer by virtue of its *respondeat superior* liability for Rothfuss' misconduct, that does not establish the requisite duty for stating a common-law cause of action for indemnification. Plaintiffs have to plead and prove a separate duty owed by the alleged indemnitor—i.e, the Union—to them as the putative indemnitee. *Raquet*, 90 N.Y.2d at 183. Ascertaining whether any such duty exists would require an interpretation of the CBA between the Union and Plaintiffs.

In sum, resolution of Plaintiffs' quasi-contract claim for equitable or common-law indemnification would require interpretation of the parties' CBA, which means that it is preempted under LMRA Section 301. *See, e.g.*, *Shearon v. Comfort Tech Mech. Co.*, 936 F. Supp. 2d 143, 154 (E.D.N.Y. 2013) (holding that employee's quasi-contract claims for quantum meruit and unjust enrichment are preempted by the LMRA because they "hinge on rights created by the CBA").

## 2.  The Amended Complaint Is Preempted Under LMRA Section 303

Section 303 of the LMRA, 29 U.S.C. § 187, "makes it unlawful for a labor organization to engage in conduct defined as an 'unfair labor practice' in Section 8(b)(4) of the [National Labor Relations Act ("NLRA")]," *Wickham Contracting Co. v. Local Union No. 3, Int'l Bhd. of Elec. Workers*, 955 F.2d 831, 833 (2d Cir. 1992), and "provides a private right of action for conduct that violations Section 8(b)(4) of the [NLRA]." *Allstate Interiors Inc. v. Carpenters*, No. 10 CIV. 2861, 2010 WL 3894915, at *2 (S.D.N.Y. Sept. 10, 2010).

According to NLRA Section 8(b)(4),

> It shall be an unfair labor practice for a labor organization or its agents . . . (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is . . . (B) forcing or requiring any person . . . to cease doing business with any other person.

29 U.S.C. § 158(b)(4). The conduct prohibited by NLRA Section 8(b)(4) is known as "secondary boycott activity" or "secondary picketing," and it "is directed 'to persuad[ing] the customers of the secondary employer to cease trading with him in order to force him to cease dealing with, or to put pressure upon, the primary employer." *Allstate Interiors, Inc.*, 2010 WL 3894915, at *2 (quoting *N.L.R.B. v. Retail Store Emp. Union, Local 1001*, 447 U.S. 607, 612 (1980); further quotation omitted; alteration in original). "[T]he touchstone for unlawful activity under [NLRA] Section 8(b)(4) (ii) is its coercive nature . . . ." *Capitol Awning Co. v. Loc. 137 Sheet Metal Workers Int'l Ass'n*, 698 F. Supp. 2d 308, 323 (E.D.N.Y. 2010) (citing *N.L.R.B. v. Fruit & Vegetable Packers Local 760*, 377 U.S. 58, 68 (1964) ("[T]he prohibition of § 8(b)(4) is keyed to the coercive nature of the conduct, whether it be picketing or otherwise.")).

As noted above, the Amended Complaint does not explicitly assert causes of action for any torts, but it demands punitive damages—which cannot be obtained via a claim of equitable or common-law indemnification. Thus, it is reasonable to construe Plaintiffs' allegations as sounding in defamation, tortious interference with prospective business relations, and tortious interference with contracts.  For example, the Amended Complaint alleges that Rothfuss enticed two of Plaintiffs' employees to go work for another company, *id.* ¶ 27; pressed a claim with the Union that Plaintiffs "stole[ ]" a customer based on Plaintiffs' successful bid on a contract with CGI Communications in 2008, *id.* ¶ 28; told Crane-Hogan personnel and staff that Plaintiffs were "untrustworthy" which caused them to be "locked out of the job site" and unable to complete their work on the Crane-Hogan project, *id.* ¶¶ 33-34; filed complaints with the City of Rochester Elevator Examining Board in order to have Goetting's elevator mechanic's license revoked, *id.* ¶ 36; made "derogatory and defamatory statements" to Delaware, with whom Plaintiffs had a subcontract, to persuade Delaware to cease doing business with them, *id.* ¶ 43; contacted the

New York State Police and a reporter for the *Democrat & Chronicle* newspaper in order to have Goetting criminally prosecuted and to damage his business and reputation, *id.* ¶ 40; and made "derogatory and untrue" statements about Plaintiffs to general contractors, supervisors, and owners at the Pullman Building job site in 2007 in order to disrupt completion of the job, *id.* ¶ 27.

Construed in the light most favorable to Plaintiffs, the foregoing allegations describe actions of a "coercive nature," *Fruit & Vegetable Packers Local 760*, 377 U.S. at 68, purportedly taken by Rothfuss, as an agent of the Union, whose "object," 28 U.S.C. § 158(4)(i)(B), was to cause general contractors and others "to cease doing business," *id.*, with Plaintiffs or to refuse to do business with them in the future. In other words, they plainly describe secondary boycott activity within the meaning of NLRA Section 8(b)(4)(ii).  *See*, *e.g.*, *Colacino v. Davis*, 19 CV 9648 (VB), 2020 WL 3959209, at *5 (S.D.N.Y. July 13, 2020) (tortious business interference claim based on allegations that defendant, as union agent, contacted plaintiffs' "vendors, contractors, and employees in an effort to intimidate [them] from doing business with plaintiffs" and commented to third parties that Colacino was a "crook" and a "thief," described secondary boycott activity); *Allstate Interiors Inc.*, 2010 WL 3894915, at *2 ("What has been alleged is secondary activity, namely, that the Union allegedly threatened, coerced and restrained general contractors and others who might potentially employ Allstate to perform construction work in order to force or persuade them to cease doing business with Allstate.").

Federal courts, including the Second Circuit, consistently have found claims alleging such secondary activity to be preempted by LMRA Section 303 and removable. *See Smart v. Loc. 702 Int'l Bhd. of Elec. Workers*, 562 F.3d 798, 808 (7th Cir. 2009) ("[Title 29 U.S.C.] section 187(b) *completely* preempts state-law claims related to secondary boycott activities described in [29 U.S.C.] section 158(b)(4); it provides an exclusive federal cause of action for the redress

of such illegal activity.") (emphasis in original); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1400 n.7 (9th Cir. 1988) ("[C]ases involving [NLRA] section 8(b)(4) are removable, *see* 29 U.S.C. § 187[.]"); *Iodice v. Calabrese*, 512 F.2d 383, 390 & n.1 (2d Cir. 1975) (holding that since the district court found that the union's interference with employer's customers did not involve violence, the plaintiffs were not entitled to compensatory or punitive damages under state law) (citing *Local 20, Teamsters, Chauffeurs & Helpers Union v. Morton*, 377 U.S. 252, 261 (1964) (holding that "state law has been displaced by [LMRA Section] 303 in private damage actions based on peaceful union secondary activities")).  To the extent the Amended Complaint asserts claims of defamation, tortious interference with prospective business relations, and tortious interference with contracts, they are preempted by LMRA Section 303 and were properly removed to this Court.

Moreover, the cause of action for equitable indemnification requires not only that Plaintiffs be without fault but that the Union be "the actual wrongdoer." *Trustees of Columbia Univ. in City of N.Y.*, 492 N.Y.S.2d at 453. The alleged wrongdoing by the Union, which purportedly makes it solely liable for the judgments obtained by the Funds against Plaintiffs, is the preempted secondary boycott activity described above. *See* Am. Compl.   ¶ 2 (alleging that Rothfuss "engaged in a disturbing and destructive pattern of outrageous and conscience shocking behavior," including making "grossly defamatory communications to Plaintiffs' customers, contractors and associates among others in order to engineer roughly $300,000 in . . . judgments" against Plaintiffs), ECF No. 1-1. Thus, in addition to being preempted under LMRA Section 301, the equitable indemnification claim is preempted under LMRA Section 303.

### E.  Supplemental Jurisdiction Exists Over Any Claims Not Preempted

As discussed above, the Court has found that the allegations in the Amended Complaint purport to state claims that are completely preempted by LMRA Sections 301 and 303. To the extent that the Amended Complaint seeks to state a claim that is not within the Court's original jurisdiction, supplemental jurisdiction over those claims exists.

Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." "For purposes of [S]ection 1367(a), claims form part of the same case or controversy if they derive from a common nucleus of operative fact." *Shahriar v. Smith & Wollensky Rest. Grp. Inc.*, 659 F.3d 234, 245 (2d Cir. 2011).

Although the Amended Complaint does not cite any particular cases or statutory authority for a "temporary restraining order, preliminary injunction," the Funds and the Union Defendants have reasonably assumed that Plaintiffs are relying on New York Civil Practice Law and Rules § 5404. *See* Funds' Mem. at 11, ECF No. 11-3. Section 5404 "provide[s] a judgment debtor in New York facing enforcement of the foreign judgment 'a forum to obtain a stay on the same terms and conditions as those relating to a New York judgment.'" *Evoy v. Amandio*, 932 N.Y.S.2d 874, 877 (Sup. Ct. 2011) (quoting *Pickwick Intl. v. Tomato Music Co.*, 462 N.Y.S.2d 781, 783 (Sup. Ct. 1983); citation omitted).

Plaintiffs' request in the Amended Complaint to have the state court stay enforcement of the Funds' and Crane-Hogan's judgments "derive from a common nucleus of operative fact[,]" *Shahriar*, 659 F.3d at 245, as the claims over which this Court has original federal jurisdiction. Therefore, the Court properly may exercise supplemental jurisdiction over the state-law request to stay the judgments.

II.    **The Motion for a TRO/Preliminary Injunction Staying the Judgments and for an Expedited Hearing**

Plaintiffs have moved pursuant to Fed. R. Civ. P. 65 "to restrain and enjoin the enforcement of certain judgments known to and held by" Crane-Hogan and the Funds. *See* Notice of Motion, ECF No. 4; Proposed Order, ECF No. 4-4. The Funds' judgments were obtained in 2010 and 2014; Crane-Hogan's judgment was obtained in 2016 or sometime thereafter.

Fed. R. Civ. P. 65 governs preliminary injunctions and restraining orders. "In this Circuit, a preliminary injunction—and therefore a TRO—will be granted if the moving party shows that he will suffer irreparable harm absent injunctive relief and either (1) that he is likely to succeed on the merits of his claim; or (2) that there are sufficiently serious questions going to the merits to make them fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party." *Tang Cap. Partners, LP v. Cell Therapeutics, Inc.*, 591 F. Supp. 2d 666, 669-70 (S.D.N.Y. 2008) (citing *Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir. 2000); other citation omitted). "[A] showing of probable irreparable harm is the 'single most important prerequisite for the issuance of a preliminary injunction.'" *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990) (quoting *Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.*, 719 F.2d 42, 45 (2d Cir.1983)). Thus, unless Plaintiffs can show an injury that "is neither remote nor speculative, but actual and imminent and cannot be remedied by an award of monetary damages," a motion for a preliminary injunction should be denied. *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999) (*per curiam*).

Cases in this Circuit and elsewhere establish that the loss of a business constitutes irreparable injury sufficient to satisfy the preliminary injunction standard. *Soap Opera Now, Inc. v. News Am. Pub. Inc.*, No. 90 CIV. 2631 (RJW), 1990 WL 124335, at *4 (S.D.N.Y. Aug. 17,

1990) (citing *Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co.*, 749 F.2d 124, 125-26 (2d Cir. 1984); *Danielson v. Local 275*, 479 F.2d 1033, 1037 (2d Cir.1973); other citation omitted)). "However, these cases stand for the proposition that the loss of a business, and not simply 'loss of business,' constitutes irreparable harm." *Id.*; *see also*, *e.g.*, *GPA Inc. v. Liggett Group, Inc.*, 862 F. Supp. 1062, 1068 (S.D.N.Y. 1994) (stating that "[t]he law requires that the injury to a business necessary to support a grant of a preliminary injunction must be damage to the business as a whole (as opposed to a temporary or partial disruption) and that damage must be immediate"). "Irreparable harm may be found where the moving party makes a 'strong showing that economic loss would significantly damage its business above and beyond a simple diminution in profits.'" *RxUSA Wholesale, Inc. v. Dep't of Health & Hum. Servs.*, 467 F. Supp. 2d 285, 301 (E.D.N.Y. 2006) (quoting *Mylan Pharm., Inc. v. Shalala*, 81 F. Supp. 2d 30, 42 (D.D.C. 2000); citation omitted), *aff'd sub nom. Dep't of Health & Hum. Servs., U.S. Food & Drug Admin. v. RxUSA Wholesale, Inc.*, 285 F. App'x 809 (2d Cir. 2008).

Plaintiffs argue in their brief that "catastrophic and irreparable damage" will occur in the absence of injunctive relief—i.e., "they will permanently lose their customers and the business. . . ." ECF No. 4-4 at 1. However, an attorney's arguments in a legal brief are not evidence. *See*, *e.g.*, *EQ Transp., Inc. v. TNT Transp., Inc.*, No. 04-CV-5711 ILG, 2005 WL 1492379, at *3 (E.D.N.Y. June 24, 2005)   ("[D]efendants cannot raise disputed issues of fact through 'mere conclusory allegations or denials in legal memoranda' because they 'are not evidence.'") (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir.1995) (internal quotation marks and citations omitted in original)). Plaintiffs' failure to provide any specific evidence regarding the likelihood of "actual and imminent" harm to their business is fatal their ability to justify issuance of a preliminary injunction.  *See Jessup v. American Kennel Club, Inc.*, 862 F. Supp. 1122, 1128

(S.D.N.Y. 1994) (denying motion for preliminary injunction "because the evidence . . . does not reflect loss of goodwill or destruction of business sufficient to support a finding of likelihood of irreparable injury"); *Soap Opera Now, Inc.*, 1990 WL 124335, at *5 ("Having reviewed all of the evidence, including Stein's testimony, the various affidavits, and the documents submitted by both parties, the Court concludes that plaintiff has failed to demonstrate a reasonable probability of irreparable harm in the form of the loss of its business.").

Even assuming Plaintiffs had come forward with evidence to support their contentions regarding the harm to their business, their delay in bringing this lawsuit and seeking a preliminary injunction weighs heavily against finding irreparable harm. These judgments have been in effect for several years—in one case, over a decade. The extreme delay exhibited by Plaintiffs here arguably rises to the level of laches and, in any event, clearly undermines their assertions regarding the urgency of their need for injunctive relief.  *See Matter of Defend H20 v. Town Bd. of the Town of E. Hampton*, 147 F. Supp. 3d 80, 104-05 (E.D.N.Y. 2015) ("[I]n addition to the complete lack of evidence supporting the Plaintiffs' claim of irreparable harm, the undisputed fact that they waited five months before making a motion for a preliminary injunction also weighs heavily against a finding of irreparable harm.") (citing *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005) ("We have found delays of as little as ten weeks sufficient to defeat the presumption of irreparable harm that is essential to the issuance of a preliminary injunction."); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir.1985) ("Although a particular period of delay may not rise to the level of laches and thereby bar a permanent injunction, it may still indicate an absence of the kind of irreparable harm required to support a preliminary injunction.")).

Furthermore, the Second Circuit has clearly held that "irreparable injury means injury for which a monetary award cannot be adequate compensation[.]" *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) (citations omitted); *accord*, *e.g.*, *Reuters Ltd.*, 903 F.3d at 907 (The "[i]rreparable harm . . . must be one incapable of being fully remedied by monetary damages.") (citation omitted). Thus, "where money damages is [sic] adequate compensation a preliminary injunction will not issue." *Id.* (citations omitted). Plaintiffs have failed to show that money damages would be insufficient should they ultimately prevail, which is another reason why they cannot make the requisite showing of irreparable harm. The deficient irreparable-harm showing, standing alone, suffices to deny injunctive relief. *Thompson v. New York Cent. R. Co.*, 361 F.2d 137, 145-46 (2d Cir. 1966).

Finally, Plaintiffs request an expedited hearing under Rule 7(d)(1) of this District's Local Rules of Civil Procedure, which provides that "[a] party seeking to shorten the schedule prescribed in [L.R. Civ. P. 7] subparagraph (b) must make a separate motion for an expedited hearing, setting forth the reasons why an expedited hearing is required. . . ." W.D.N.Y. Local R. Civ. P. 7(d)(1). Given that the briefing schedule contemplated by subsection (b) has long since expired, the request is denied as moot.

## III.    Conversion of the Motions to Dismiss

If a party presents matters outside the pleadings on a Fed. R. Civ. P. 12(b)(6) motion, "the motion must be treated as one for summary judgment under [Fed. R. Civ. P.] 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "Ordinarily, this means that a district court must give notice to the parties before converting a motion to dismiss pursuant to Rule 12(b)(6) into one for summary judgment and considering matters outside the pleading." *Sahu v. Union Carbide Corp.*, 548 F.3d

59, 67 (2d Cir. 2008) (quotation omitted).  "The district court's conversion of a Rule 12(b)(6) motion into one for summary judgment is governed by principles of substance rather than form." *Id.* (quotation omitted).

Here, Crane-Hogan has submitted a "statement of facts" and, as grounds for dismissal, has referred to materials outside the Amended Complaint that were not referenced, much less relied upon, by Plaintiffs in drafting. The Funds/Union Defendants have argued, among other things, that dismissal is required based on Plaintiffs' failure to exhaust their remedies. The failure to exhaust contractual remedies is an affirmative defense. *Chapman v. UAW Local 1005*, 670 F.3d 677, 680 (6th Cir. 2012). "Generally, a plaintiff is not required to anticipate and plead facts to avoid an affirmative defense. Thus, dismissal on the grounds of an affirmative defense is appropriate only if the operative pleading shows on its face that the claim is barred by the defense." *Pridy v. Piedmont Nat. Gas Co., Inc.*, 458 F. Supp. 3d 806, 819 (M.D. Tenn. 2020) (quoting *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010)).

"Courts generally cannot grant motions to dismiss on the basis of an affirmative defense unless the plaintiff has anticipated the defense and explicitly addressed it in the pleadings." *Id.* (citing *Pfeil v. State St. Bank & Tr. Co.*, 671 F.3d 585, 599 (6th Cir. 2012), *abrogated on other grounds by Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014)). Plaintiffs have not done so here, and therefore conversion of the Funds/Union Defendants' Motion to Dismiss is required. Plaintiffs will be afforded a reasonable period of time to submit materials in opposition to the converted Motions to Dismiss.

**CONCLUSION**

For the foregoing reasons, the Court DENIES Plaintiffs' Motion to Remand, ECF No. 4; DENIES the request for injunctive relief, *id.*; DENIES the request for an expedited hearing, *id.*;

and CONVERTS the Motions to Dismiss, ECF Nos. 8 & 10, to motions for summary judgment under Fed. R. Civ. P. 56. If Plaintiffs elect to submit materials in opposition to the converted motions, those materials are due within thirty (30) days of the date of entry of this Decision and Order.

**IT IS SO ORDERED.**

/s/ Charles J. Siragusa

HON. CHARLES J. SIRAGUSA
United States District Judge

Dated:  August 26, 2021
Rochester, New York.