UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

OMNI ELEVATOR CORPORATION and
CHRISTIAN GOETTING,                                      DECISION AND ORDER
                                                        19-CV-6778-CJS
                                    Plaintiffs,

          -vs-

INTERNATIONAL UNION OF
ELEVATOR CONSTRUCTORS and its
LOCAL 27 AFFILIATE; ALAN
ROTHFUSS; CRANE-HOGAN
STRUCTURAL SYSTEMS, INC.;
TRUSTEES OF THE NATIONAL
ELEVATOR INDUSTRY PENSION,
HEALTH BENEFIT, EDUCATIONAL,
ELEVATOR INDUSTRY WORK
PRESERVATION FUNDS, ELEVATOR
CONSTRUCTORS ANNUITY AND
401(K) RETIREMENT PLAN;
DELAWARE ELEVATOR, INC.,

                                    Defendants.

_____

**APPEARANCES**

For Plaintiffs:                          John M. Regan, Jr., Esq.
                                         Dibble & Miller, P.C.
                                         55 Canterbury Rd.
                                         Rochester, NY 14607-3436

For Defendants International Union of Elevator
Constructors and its Local 27 Affiliate;
Alan Rothfuss; the Trustees of the National
Elevator Industry Pension, Health Benefit,
Educational, Elevator Industry Work
Preservation Funds; and the Elevator
Constructors Annuity and 401(k)
Retirement Plan:                         Jennifer A. Clark, Esq.
                                         Blitman & King LLP
                                         Frankln Center, Suite 300
                                         443 North Franklin Street
                                         Syracuse, NY 13204

1

For Defendant Crane-Hogan Structural
Systems, Inc.:                          Daniel P. Adams, Esq.
                                        Adams Bell Adams, P.C.
                                        28 East Main St., Suite 600
                                        Rochester, NY 14614

For Defendant Delaware Elevator, Inc.:  Delaware Elevator, Inc., *Pro Se*

## INTRODUCTION

In this removed action, Omni Elevator Corporation ("Omni") and Christian Goetting ("Goetting") (collectively, "Plaintiffs") seek to enjoin enforcement of three money judgments obtained against them by defendants International Union of Elevator Constructors and its Local 27 Affiliate; Alan Rothfuss; the Trustees of the National Elevator Industry Pension, Health Benefit, Educational, Elevator Industry Work Preservation Funds;[1] and the Elevator Constructors Annuity and 401(k) Retirement Plan (collectively, "Funds/Union Defendants"), and defendant Crane-Hogan Systems, Inc. ("Crane-Hogan"). In its previous Decision and Order entered August 27, 2021, ECF No. 33, the Court denied Plaintiffs' Motion to Remand, ECF No. 4. The Court also converted the Funds/Union Defendants' Motion to Dismiss, ECF No. 8, and Crane-Hogan's Cross-Motion to Dismiss, ECF No. 10, to summary judgment motions pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). For the reasons discussed below, the motions for summary judgment are granted, and the Amended Complaint ("Am. Compl."), ECF No. 1-1 at 18–30, is dismissed with prejudice.

---

[1] The correct names of the funds appear to be the National Elevator Industry Pension Fund, National Elevator Industry Health Benefit Plan, National Elevator Industry Educational Plan, and the Elevator Industry Work Preservation Fund. *See* National Elevator Industry, Inc., www.neii.org/contact.cfm.

## BACKGROUND

I.   **The Parties**

The National Elevator Industry Pension Fund, National Elevator Industry Health Benefit Plan, National Elevator Industry Educational Plan, Elevator Industry Work Preservation Fund, and Elevator Constructors Annuity and 401(k) Retirement Plan (collectively, "the Funds") are employee benefit plans organized under the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 88 Stat. 829, 29 U.S.C. § 1001 *et seq.* The Funds are financed by payments, or "contributions," made by employers under the terms of their collective bargaining agreements with the International Union of Elevator Constructors ("IUEC").

The IUEC is an unincorporated association and labor organization in an industry affecting commerce as defined in Labor Management Relations Act ("LMRA") § 2(5),  29 U.S.C. § 141, *et seq.*, as amended. Alan Rothfuss ("Rothfuss") is the business manager/financial secretary of IUEC's Rochester-based union affiliate, Local 27. Local 27 is an unincorporated labor association as defined in LMRA § 2(5).  The IUEC, Local 27, and Rothfuss are collectively referred to as the "Union Defendants."

Goetting is the owner and president of Omni, which employs workers to repair, maintain, and install elevators. Omni is the successor in interest to a domestic corporation known as The Elevator Guild ("the Guild") formed by Goetting. *See* Am. Compl. ¶¶ 4–5, 18–19, Exhibit ("Ex.") C, Exhibits to Notice of Removal, ECF No. 1-1. The Guild signed a Short Form Agreement on June 7, 2007, binding it to the terms of the collective bargaining agreement ("CBA") with the IUEC for the period from July 9, 2007, through July 8, 2012. *See* Aff. of Alan Rothfuss ("Rothfuss Aff.") at 2, ¶ 4 & Ex. A, ECF No. 11-1. By virtue of

the Short Form Agreement's automatic renewal clause, the Guild became bound to a successor CBA covering the period from July 9, 2012, to July 8, 2017. *Id.* at 3, ¶ 5 & Ex. B, ECF No. 11-1.

Defendant Delaware Elevator Inc. ("Delaware") has not appeared in this matter. Plaintiffs indicate that it was made a defendant "solely because [it] may be in possession of funds being held pursuant to a restraining notice predicated upon one of [the] liabilities" incurred by Plaintiffs vis-à-vis Crane-Hogan. Am. Compl. ¶ 1. However, Delaware is not included in any allegations of wrongdoing in the Amended Complaint, and Plaintiffs subsequently have confirmed that there "was never any substantive claim against Delaware." Declaration of John M. Regan, Jr., Esq. ("Regan Decl.") ¶ 3, ECF No. 40 (capital letters omitted).

## II.    The Judgments Against Plaintiffs

### A.   The Funds' Judgments in the Eastern District of Pennsylvania

The Funds commenced an action on October 6, 2009, in the Eastern District of Pennsylvania ("EDPA") pursuant to ERISA Sections 502(g)(2) and 515, 29 U.S.C. §§ 1132(g)(2)(A) and 1145. The Funds sued the Guild for failing to pay contributions owed under the 2007-2012 CBA for the period from February 2009, through May 2009; and Goetting, personally, for his failure to remit the monies over which he exercised fiduciary control. Neither the Guild nor Goetting appeared to defend the suit.

On April 12, 2010, the United States District Court for the Eastern District of Pennsylvania awarded the Funds a default judgment against the Guild and Goetting in the amount of $25,653.96. *See Trustees of the Nat'l Elevator Industry Pension, Health, Benefit, Educational, Elevator Industry Work Preservation Funds, Elevator Constructors*

4

*Annuity and 401(k) Retirement Plan v. The Elevator Guild, Inc., et al.*, No. 2:09-CV-4578-SD (E.D. Pa. Apr. 10, 2010) (Dalziell, D.J.) ("*Elevator Guild I*"); Ex. L, ECF No. 1-1 at 135-38. Plaintiffs never appealed or otherwise challenged this judgment, which was registered in this Court on July 16, 2010, pursuant to 28 U.S.C. § 1963 and New York Civil Practice Law and Rules ("CPLR") § 5018. *See* Ex. J, ECF No. 1-1 at 105–15.

On April 29, 2011, the Funds instituted another ERISA action in the EDPA against the Guild, seeking to recover delinquent contributions due under the 2007-2012 CBA. Default judgment was entered against the Guild for its failure to defend. The Funds also asserted an ERISA action against Goetting for breach of his fiduciary obligations.  On January 23, 2013, the district court granted the Funds' unopposed motion for summary judgment against Goetting. *Trustees of Nat. Elevator Indus. Pension, Health Ben., Educ., Elevator Indus. Work Pres. Funds v. Elevator Guild, LLC*, No. CIV.A. 11-2870, 2013 WL 271888, at *1 (E.D. Pa. Jan. 23, 2013) (Rufe, D.J.) ("*Elevator Guild II*"); *see also* Ex. L, ECF No. 1-1 at 124–34.

The district court in *Elevator Guild II* found that the following facts were "uncontested" by virtue of Goetting's failure to respond to the Funds' requests for admissions and failure to respond to the summary judgment motion: Under the CBA signed by Goetting as "owner and/or officer of the Guild," the Guild was obligated to remit contributions to the Funds for each hour worked by any employee of the Guild covered by the CBA; the CBA, in conjunction with the Agreements and Declaration of Trust to which the Guild was bound as a party to the CBA, required the Guild to report to the Funds, by the 15th day of each month, the number of hours worked by its employees in the prior month and pay the contributions due to the Funds at that time; the Agreements

and Declarations of Trust provide that legal action may be taken to collect all contributions due to the Funds should the employers fail to pay, as well as liquidated damages authorized by ERISA, interest, and attorneys' fees and costs; the Guild employed individuals covered by the CBA during the effective period of the CBA (July 9, 2007 through July 8, 2012); Goetting exercised authority and control over payroll deductions and payment of contributions to the Funds for those employees, as well as the payment of other business expenses; from July 2007 through November 2010, Goetting signed and submitted to the Funds the required reports regarding the number of hours worked by the Guild employees, but he failed to remit the corresponding payments for many of those months; and, since November 2010, the Guild failed to report hours worked by its covered employees and failed to remit payments. *Elevator Guild II*, 2013 WL 271888, at *2 (footnotes omitted).   Subsequently, a judgment in the amount of $184,538.45 was entered against the Guild and Goetting on May 30, 2014. Plaintiffs never appealed or otherwise challenged this judgment, which was duly registered in this Court on July 31, 2014, pursuant to 28 U.S.C. § 1963 and CPLR § 5018. *See* Ex. K, ECF No. 1-1 at 116–22.

The Funds/Union Defendants represent that the judgment in *Elevator Guild I* remains partially unpaid, while the judgment in *Elevator Guild II* remains unpaid in its entirety.

### B.  The Crane-Hogan Judgment in New York State Court

The Guild and Crane-Hogan signed a subcontract agreement regarding a public project involving parking garages in the City of Rochester for fiscal year 2014. *See* Guild's Aff. for J. by Confession ¶ 5, ECF No. 10-4.  After "certain disputes" arose concerning the

Guild's performance of the written agreement, Crane Hogan brought a breach of contract action against the Guild in Monroe County Supreme Court, Index No. 15-13562, seeking $386,300. *Id.* Crane Hogan and the Guild settled the case upon the Guild's provision of an affidavit of confession of judgment in the amount of $386,300. *Id.* Crane Hogan filed the judgment with the Monroe County Clerk on June 8, 2017. *See* Affirmation of Daniel Adams, Esq. ¶ 5 & Ex. A, ECF No. 10-1. Omni admitted it was the successor in interest to the Guild and provided a separate affidavit of confession of judgment to Crane Hogan, which was filed with the Monroe County Clerk on June 28, 2019. *Id.* ¶ 6 & Ex. B, ECF No. 10-1.  Crane Hogan indicates that the judgment remains partially unpaid.

### III.      Plaintiffs' State Court Action Against the Union and the Funds

On September 19, 2019, Plaintiffs commenced an action in New York State Supreme Court, County of Monroe (Index No. E2019-008965). In their Amended Complaint, filed on October 7, 2019, Plaintiffs allege that on unspecified occasions between 2007 and 2018, Rothfuss "engaged in a pattern of outrageous and conscience shocking behavior designed to disrupt and destroy Plaintiffs' business and livelihood[,]" Am. Compl. ¶ 2, by making "grossly defamatory communications to Plaintiffs' customers, contractors and associates among others in order to engineer roughly $300,000 in: a) judgments . . . in the United States District Court for the Eastern District of Pennsylvania in favor of the [Funds]; and b) a judgment of similar size in Monroe County Supreme Court in favor of Defendant Crane-Hogan." *Id.* (capital letters omitted).

Plaintiffs allege that sometime in the summer of 2007, Rothfuss made "derogatory and untrue comments" about Goetting and "entic[ed]" two of his employees to leave the project and work elsewhere. *Id.* ¶ 27. In 2008, Rothfuss asserted a claim against Plaintiffs

with the Union, claiming that they "stole" a certain contract from another company. *Id.* ¶ 28. During the parking garage project with Crane-Hogan, on unspecified dates, Rothfuss appeared "frequently" at the work site and made "derogatory and defamatory communications" regarding Plaintiffs. *Id.* ¶ 33. Rothfuss claimed that Goetting was "untrustworthy because [he] owed money to the Union, a state of affairs that Rothfuss himself had instigated and engineered through the litigation by the [Funds] in the EDPA." *Id.* (capital letters omitted). According to Plaintiffs, Rothfuss' conduct resulted in Plaintiffs being "locked out" of the parking garage job site "one day in 2016" and later sued for breach of contract by Crane-Hogan. *Id.* ¶ 35.

Plaintiffs allege that "[s]hortly after" this incident involving Crane-Hogan, Rothfuss filed a complaint with the City of Rochester Elevator Examining Board ("EEB") to revoke Goetting's license. *Id.* ¶ 36. In 2017, Plaintiffs filed a lawsuit in this Court to enjoin the EEB proceedings. *Id.* ¶ 38. While these disputes were pending, Rothfuss allegedly sent anonymous packages to the New York State Police and a reporter for a local newspaper urging a criminal prosecution of Plaintiffs. *Id.* ¶ 40. The EEB and federal lawsuit both were "resolved with compromises." *Id.* ¶ 39. Neither the State Police nor the newspaper acted on Rothfuss' alleged communications. *Id.* ¶ 40.

The Amended Complaint purports to assert one cause of action for equitable indemnification against the Union Defendants. *Id.* § IV, ¶¶ 46-50; *see also* Letter from John M. Regan, Jr., Esq. to Funds/Union Defendants' Attorneys, dated Oct. 2, 2019, ECF No. 1-1 at 72. As relief, Plaintiffs seek a "temporary restraining order, preliminary injunction enjoining further enforcement of the relevant judgment against Plaintiffs . . . during the pendency of [the] action," and punitive damages. *Id.* § V.

### IV.     Removal to Federal Court

The Funds/Union Defendants removed the Amended Complaint to this Court on October 21, 2019, with Crane-Hogan consenting to removal. *See* Notice of Removal, ECF No. 1. Plaintiffs responded by filing a Motion to Remand, ECF No. 4, which included a request for a temporary restraining order ("TRO")/preliminary injunction staying enforcement of the judgments, and a request for an expedited hearing.  The Funds/Union Defendants filed a Motion to Dismiss, ECF No. 8, and opposed remand and the other relief sought, *see* ECF No. 11 through 11-3. Crane-Hogan filed a Cross-Motion to Dismiss, ECF No. 10. Plaintiffs opposed the requests to dismiss. ECF No. 15 through 15-3.

In a Decision and Order entered August 27, 2021, ECF No. 33, the Court denied Plaintiffs' Motion to Remand, ECF No. 4, agreeing with the Funds/Union Defendants that the Amended Complaint was preempted by LMRA §§ 301 and 303. *Id.* at 11–21. The Court denied the request for a TRO/preliminary injunction staying the three judgments because Plaintiffs had not made the required showing under Federal Rule of Civil Procedure 65 ("Rule 65"). *Id.* at 23–26. The Court determined that to the extent the Amended Complaint asserted a state law claim pursuant to CPLR § 5404 to stay enforcement of the judgment, supplemental jurisdiction over it could be exercised. *Id.* at 22. The Court denied the request for an expedited hearing as moot because the briefing schedule it sought to shorten had expired. *Id.*  at 26. Finally, the Court converted the Motions to Dismiss, ECF Nos. 8 and 10, to motions for summary judgment under Rule

56. *Id.* at 26–28. Plaintiffs were given thirty days to submit any materials in opposition to the converted motions.

On September 27, 2021, Plaintiffs requested and received an extension of time until October 8, 2021, to respond to the Court's Decision and Order. ECF Nos. 35, 36.

On October 8, 2021, Plaintiffs filed a letter indicating, for the first time, that they were "completely flummoxed" by the Court's Decision and Order, that they "d[id] not know how the Court wish[ed] [them] to respond," and that they required "guidance and clarification." ECF No. 37.

In a text order entered October 13, 2021, ECF No. 38, the Court stated that, "[t]o the extent it was unclear from the Decision and Order (ECF No. 33), on the now-converted motions for summary judgment, the Court intends to consider matters outside of the Complaint, namely: 1) The documents attached to the Notice of Removal (ECF No. 1-1); 2) the documents comprising ECF No. 10 (including 10-1 through 10-4); and 3) the documents comprising ECF No. 11 (including 11-1 through 11-3)." With that clarification, the Court ordered Plaintiffs to file and serve any response to Defendants' now-converted summary judgment motions on or before October 19, 2021.

Plaintiffs, on October 19, 2021, submitted the Regan Decl., ECF No. 40, and an Affidavit by Christian Goetting ("Goetting Aff."), ECF No. 39. The Regan Decl. challenges the correctness of the Court's August 27, 2021 Decision and Order and suggests that the case should be referred to the District's Alternative Dispute Resolution ("ADR") program. The Goetting Aff. reasserts the request for a stay of enforcement.

The Funds/Union Defendants submitted a Reply Affidavit in Support of Defendants' Motion for Summary Judgment Dismissing the Complaint ("Funds/Union

Defs.' Aff."), ECF No. 41.  The Funds/Union Defendants have construed the Regan Decl., ECF No. 40, as a motion to vacate the Court's previous Decision and Order pursuant to Rule 60(b).

**DISCUSSION**

**I.     Characterization of Plaintiffs' Submissions (ECF Nos. 39 and 40)**

As an initial matter, Plaintiffs' submissions in opposition to the pending summary judgment motions completely ignore the issue of summary judgment. Instead, Plaintiffs incorrectly surmise that the Court wants them to explain why they found the Court's Decision and Order "so confusing and difficult to address." Regan Decl. ¶ 1, ECF No. 40. They then attempt to challenge the correctness of the Court's Decision and Order denying their Motion to Remand, make the "respectful suggestion" that the matter should be referred to the District's ADR program, argue that this Court has somehow denied them the opportunity to raise a jurisdictional challenge to the EDPA judgments (which they chose not to appeal or collaterally attack), and reassert the request for a stay of enforcement. The Funds/Union Defendants have construed the Regan Decl. as a motion for relief from judgment pursuant to Rule 60(b) and argue that Plaintiffs have not presented any evidence that satisfies Rule 60(b)'s criteria. Funds/Union Defs.' Aff., ECF No. 41.

If the Regan Decl. and the Goetting Aff. are seeking some form of relief from this Court, it is not evident from the face of those pleadings. In particular, both documents fail to comply with this District's Local Rule of Civil Procedure 7 governing motion practice and do not cite any procedural rules that would allow them to reargue their previously denied motions for remand and a stay of enforcement.

Even *pro se* litigants "generally are required to inform themselves regarding procedural rules and to comply with them." *Edwards v. INS*, 59 F.3d 5, 8 (2d Cir. 1995); *see also Carmona v. Wright*, 233 F.R.D. 270, 275 (N.D.N.Y. 2006) ("*Pro se* litigants must comply with local rules, and the failure to do so is sanctionable.") (citing *LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995); other citations omitted). Here, of course, Plaintiffs are not proceeding *pro se*. The individual who prepared ECF Nos. 39 and 40, and who signed ECF No. 40, is a licensed attorney who has been practicing for years in this Court. There is no excuse for his failure to follow this District's Local Rule concerning motion practice. The Court accordingly declines to treat ECF Nos. 39 and 40 as a motion or other affirmative request for relief.

## II. Defendants' Motions for Summary Judgment (ECF Nos. 8 and 10)

### A. Rule 56 Standard

"It is well-settled that summary judgment may not be granted unless 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Russell v. Young*, No. 18-CV-6209 (CJS), 2021 WL 2075436, at *3 (W.D.N.Y. May 24, 2021) (quoting Fed. R. Civ. P. 56(a); citing *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993) (stating that summary judgment is only appropriate where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party")). "A party moving for summary judgment bears the burden of establishing that no genuine issue of material fact exists[,]" *id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), and "must support that assertion by . . . citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1).

"Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate 'specific facts showing that there is a genuine issue for trial.'" *Russell*, 2021 WL 2075436, at *2 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor[,]" *id.* (citing *Anderson*, 477 U.S. at 249), and "must support its assertion that a fact is genuinely disputed by citing to particular parts of the record, or showing that the materials cited by the movant are inadmissible or do not establish the absence of a genuine dispute." *Id.* (citing Fed. R. Civ. P. 56(c)(1)).

### B. The LMRA § 301 Claim Is Dismissed as Untimely or, in the Alternative, Unexhausted

#### 1. Construed as an Unfair Labor Practice Claim, the LMRA § 301 Claim Is Untimely

The Funds/Union Defendants argue that the LMRA § 301 claim, construed as a "hybrid" or unfair labor practice claim, is untimely under the applicable six-month limitations period.

"Where, as here, the federal statute under which a plaintiff brings an action does not provide a specific limitations period, federal courts must determine the appropriate limitations period according to federal law." *Phelan v. Loc. 305 of United Ass'n of Journeymen, & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada*, 973 F.2d 1050, 1058 (2d Cir. 1992) (citing *Int'l Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-CIO v. Hoosier Cardinal Corp.*, 383 U.S. 696, 701 (1966) (federal law governs timeliness issue in LMRA § 301 suits)). Courts are to "analyze each labor case on its facts before choosing which limitations period to borrow." *Id.* at 1059 (citation omitted).

In *Hoosier Cardinal Corp.*, the Supreme Court held that the statute of limitations for state law contract claims governs claims for violations of LMRA § 301 that are "essentially . . . action[s] for damages caused by an alleged breach of an employer's obligation embodied in a collective bargaining agreement." 383 U.S. at 704–05 & n.7. "Such an action closely resembles an action for breach of contract cognizable at common law." *Id.* Because the allegations in *Hoosie*r involved both written and oral contracts, the Supreme Court held that the longer state statute of limitations period for oral contracts applied in that case. *Id.* at 706–07. Thus, in New York, a claim under LMRA § 301 based solely on the breach of the terms of a written CBA would be subject to a six-year statute of limitations.  *E.g.*, *Allen v. United Parcel Serv., Inc.*, 988 F. Supp. 2d 293, 298 (E.D.N.Y. 2013) (citing N.Y. Civ. Prac. Law & Rules § 213(2)).

On the other hand, the Supreme Court has applied a six-month statute of limitations, borrowed from LMRA § 10(b), 20 U.S.C. § 160(b), to so-called "hybrid" § 301 claims. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164–64, 171 (1983). In a hybrid § 301 suit, "the union member sues both an employer and a union alleging the employer's breach of a collective bargaining agreement and the union's breach of its duty of fair representation by mishandling the ensuing grievance or arbitration proceedings." *Phelan*, 973 F.2d at 1059 (citation omitted).

The Second Circuit also has been "clear in instructing district courts not to limit *DelCostello* to its facts," and it therefore has "borrowed the section 10(b) [six-month] limitations period where claims have directly implicated the collective bargaining relationship, even in the non-hybrid context." *Phelan*, 973 F.2d at 1060 (citing, *inter alia*,

*Eatz v. DME Unit of Loc. Union No. 3 of Int'l Bhd. of Elec. Workers, AFL-CIO*, 794 F.2d 29, 33 (2d Cir. 1986) ("Due to the undeniable resemblance and substantial overlap between unfair labor practices and breaches of the duty of fair representation, . . . we read *DelCostello* to require that the § 10(b) six-month limitations period also be applied to unfair representation claims [against the union] standing alone[.]")).

Plaintiffs contend that the wrongful conduct allegedly committed by Rothfuss in his role as a Union representative was directed against Goetting personally as a member of the Union. *See* Funds/Union Defs.' Mem. at 24 n.11, ECF No. 8-1 (citing Am. Compl. ¶¶ 25–26 (stating that "shortly after" Goetting had re-enrolled in the Union, Rothfuss, who "seemed to harbor a hostility to [Goetting] of uncertain etiology" "began a long[-]term malicious effort to harm [Goetting]'s business and livelihood")). The circumstances here appear most analogous to cases in which courts in this Circuit have applied the six-month statute of limitations. *See*, *e.g.*, *Gates v. Loc. Union No. 14 of Int'l Union of Operating Engineers, AFL-CIO,* No. 85 CV 3760, 1988 WL 1953, at *3 (E.D.N.Y. Dec. 29, 1987) ("While plaintiff Gates has not alleged a 'hybrid' type action, he has alleged that the defendants breached their duty of fair representation by failing to enter into any valid collective bargaining agreements . . . . He also alleged that defendants misrepresented the status of the collective bargaining agreements, entered into two agreements without membership ratification, and discriminated against plaintiff with regard to the employment referral system.") (citing *Eatz*, 794 F.3d at 33). Therefore, the Court will apply the six-month statute of limitations. *See id.*

"A cause of action based on the duty of fair representation accrues when the union members know or reasonably should know that a breach of that duty has occurred." *Eatz*,

794 F.2d at 33 (citing *Santos v. District Council*, 619 F.2d 963, 969 (2d Cir. 1980)). Plaintiffs have alleged improper conduct by Rothfuss against Goetting that occurred on unspecified dates in "the summer of 2007," Am. Compl. ¶ 26; unspecified dates in 2008, *id.* ¶¶ 27–28; sometime between "June of 2014" and "one day in 2016," *id.* ¶¶ 32–34; unspecified dates in 2016 and 2017, *id.* ¶¶ 36–40; and "the fall of 2018," *id.* ¶ 42. Regardless of whether date of the original Complaint (September 19, 2019) or Amended Complaint (October 7, 2019) is used, Plaintiffs have not alleged any conduct by Rothfuss that is timely under the six-month statute of limitations. Therefore, Plaintiffs' Section 301 claim must be dismissed as barred by the applicable six-month statute of limitations.

### 2. Construed as a Breach of Contract Claim, the LMRA § 301 Claim Is Unexhausted

The Funds/Union Defendants argue that to the extent the LMRA § 301 claim is construed as a breach of contract claim, it must be dismissed as unexhausted because Plaintiffs failed to utilize the grievance procedures in the CBAs.

"It has long been the law that before a plaintiff may file a claim in federal court under Section 301 [of the LMRA], it first must exhaust the grievance and arbitration procedures found within the CBA to which the litigants are parties." *Adirondack Transit Lines, Inc. v. United Transp. Union, Loc. 1582*, 305 F.3d 82, 86 (2d Cir. 2002) (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965)). The 2007–2012 CBA and the 2012–2017 CBA contain the following grievance arbitration provision:

> Par 1.  Any difference or dispute regarding the application and construction of this Agreement, shall be referred to as a "grievance" and shall be resolved under the following Procedure. . . .
>
> . . . .

Par. 5 If the grievance is not settled by the National Arbitration Committee, the Union or the Employer, within fifteen (15) working days of the Employer's or Union's disposition as outlined in Par. 4, may appeal the grievance to impartial arbitration.

Rothfuss Aff. at 4, ¶ 6, ECF No. 11-1 (quoting Ex. B (2007–2012 CBA) at 37–40; citing Ex. C (2012–2017 CBA) at 29–31; Ex. A (Short Form Agreement), ¶ 11).

Rothfuss has averred that neither the Union nor the Guild ever terminated the original or successor CBAs. Rothfuss Aff. at 2–3, ¶¶ 4–5, ECF No. 11-1. Goetting, in his answer filed in *Elevator Guild II*, conceded that the CBA was in effect through at least July 8, 2012. *See* ECF No. 1-1 at 126, 128 & n.12 (district court cited Goetting's Answer ¶ 1, to support the statement that "[t]he Guild employed individuals covered by the effective period of the CBA (July 9, 2007 through July 8, 2012)).[2]

The Court notes that Plaintiffs question whether there was any CBA after 2011–2012; according to Goetting, he hand-delivered a letter terminating his "company's participation in the Union" to the Union's offices in "late 2011 or early 2012," but he no longer has a "copy of the notice." Affidavit of Christian Goetting in Support of Motion to Dismiss, ECF No. 15-2 ¶ 3. Goetting's conclusory, vague assertion—which is contradicted by his earlier representations in *Elevator Guild II*—does not create a genuine issue of material fact as to whether the CBA was in effect after 2012. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999) (district court properly disregarded affiant's

---

[2] In any event, the judgments obtained by the Funds against Plaintiffs stemmed from lawsuits filed before 2012 and concerned employee benefit contributions that became due prior to December 2011. *See* Funds/Union Defs.' Reply Mem. at 7-8, ECF No. 18; *see also* ECF No. 1-1 at 62–63 (itemized 2010 judgment); 64-65 (itemized 2014 judgment). Thus, as the Funds/Union Defendants argue, it is immaterial if the Guild terminated the CBA after July 8, 2012. Furthermore, the existence of a CBA is irrelevant under LMRA § 303. *See Monarch Long Beach Corp. v. Soft Drink Workers, Local 812, Int'l Bhd. of Teamsters*, 762 F.2d 228, 231 (2d Cir. 1985) (explaining that claims under LMRA § 303 are "not a collective bargaining dispute" and can "involve parties who are otherwise completely unrelated"). Thus, even if LMRA § 301 preemption did not apply because there was no CBA in effect at the relevant time—which is not the case— the Amended Complaint still is preempted by LMRA § 303.

allegations of race animus as conclusory, where his affidavit contained only "'conclusory allegations'" and no "'concrete particulars'") (quotation and citations omitted), *as amended on denial of reh'g* (Dec. 22, 1999).

Rothfuss has averred that Plaintiffs never filed a grievance pursuant to the procedure set forth in the CBAs concerning any of the alleged conduct set forth in the Amended Complaint. *See* Rothfuss Aff. at 4, ¶ 7, ECF No. 11-1. Plaintiffs have offered no evidence to refute that assertion.

Because Plaintiffs failed to exhaust the grievance and arbitration remedies provided in the CBAs, the LMRA § 301 claim is dismissed as unexhausted. *See*, *e.g.*, *Vera v. Saks & Co.*, 335 F.3d 109, 118–19 (2d Cir. 2003) ("The parties do not seem to dispute that the CBA contains clear grievance and arbitration procedures, and that plaintiff failed to file a grievance or to seek arbitration of his claim . . . . Because plaintiff failed to exhaust his remedies under the CBA to grieve and arbitrate his section 193 claim, the District Court properly granted defendant summary judgment.") (internal and other citations omitted); *Dougherty v. Am. Tel. & Tel. Co.*, 902 F.2d 201, 203 (2d Cir. 1990) (concluding that plaintiffs' state-law claims were not independent of the collective bargaining agreement and affirming grant of summary judgment based on plaintiffs' failure to exhaust grievance procedures in that agreement).

## C. The LMRA § 303 Claim Is Partially Untimely and Entirely Fails as a Matter of Law

The Funds/Union Defendants argue that the LMRA § 303 claim is partially untimely because certain allegations occurred outside the applicable statute of limitations, which they contend is three years. Funds/Union Defs.' Mem. at 23–24 & n.10, ECF No. 8-1.

In *Monarch Long Beach Corp. v. Soft Drink Workers, Loc. 812, Int'l Bhd. of Teamsters*, 762 F.2d 228 (2d Cir. 1985), the Second Circuit examined the statute of limitations for LMRA § 303. Because it is "an action to recover injuries to one's business *or* to one's property caused by a specific type of tortious conduct[,]" *id.* at 231 (emphasis supplied), the two "separate wrongs . . . should be considered separately for purposes of identifying an appropriate limitations period." *Id. Monarch* was an action for economic damages by a business against an unrelated union for engaging in prohibited secondary boycott activities, i.e., picketing and distributing handbills to customers at plaintiff's retail outlet to persuade them to buy only locally sourced items from the business. *Id.* at 232. The Second Circuit found that since the plaintiff alleged only damages to its business and did not allege injury to property, the "most suitable state law analogue" was "New York's cause of action for damages to one's business caused by actions in restraint of trade, N.Y. Gen. Bus. Law § 340 (McKinney 1968 & Supp.1984), which has a four[-]year statute of limitations." *Id.*

The case on which the Funds/Union Defendants rely to argue for a three-year statute of limitations, *Tahari, Ltd. v. New York Coat, Suit, Dress, Rainwear Allied Workers Union*, No. 84 CIV. 8977 (PNL), 1986 WL 3520, at *2 (S.D.N.Y. Mar. 17, 1986), distinguished *Monarch* because "the union [in *Tahari*] picketed plaintiff and its contractors, thereby interfering directly, rather than secondarily [as in *Monarch*], with plaintiff's business contracts and operations." *Id.* at *3. Therefore, the district court found that the case more closely resembled one for interference with contract to which the New York courts have applied CPLR § 214(4)'s three-year limitations period for actions based on injury to property. *Id.* (citations omitted).

The Funds/Union Defendants argue that the four-year statute of limitations for a restraint-of-trade action does not apply because Plaintiffs have not alleged a conspiracy or reciprocal agreement to restrain trade. ECF No. 8-1 at 23 n.10. They are correct that a conspiracy or reciprocal agreement is an element of a N.Y. Gen. Bus. Law § 340 claim, but neither *Monarch* nor *Tahari* discussed the absence or presence of a conspiracy. Rather, the reason articulated by *Tahari* for distinguishing *Monarch* was that it involved secondary versus primary boycott activity. Since the Funds/Union Defendants characterize Rothfuss' actions as secondary boycott activity, *Monarch* arguably applies.

Ultimately, it makes little difference; each instance of Rothfuss' alleged conduct that preceded the first EDPA lawsuit, which was filed in 2009, is untimely whether a four-year or three-year limitations period is used.  As for Crane-Hogan, it brought its action against Plaintiffs sometime in 2015. Even if the four-year limitations period is used, all instances of Rothfuss' alleged conduct prior to September 19, 2015, are time-barred.

### D.  The LMRA § 303 Claim Fails as a Matter of Law

The Funds/Union Defendants argue that the LMRA § 303 claim fails entirely as a matter of law because Plaintiffs cannot prove the "causation" element. Funds/Union Defs.' Mem. at 14–15, ECF No. 8-1 (citing *Tru-Art Sign Co. v. Loc. 137 Sheet Metal Workers Int'l Ass'n*, 573 F. App'x 66, 67 (2d Cir. 2014) (unpublished opn.)).

Under § 303 of the LMRA, it is unlawful for "any labor organization to engage in any activity or conduct defined as an unfair labor practice in" LMRA § 8(b)(4), 29 U.S.C. § 158(b)(4). *See* 29 U.S.C. § 187(a). The first of the three elements "'relates to the *nature* of the union's conduct: whether the union or its agents engaged in, induced, or encouraged a refusal to perform services (a § 8(b)(4)(i) claim), or threatened, coerced, or

restrained any person (a § 8(b)(4)(ii) claim).'" *Tru-Art Sign Co.*, 573 F. App'x at 67 (quoting *Carrier Air Conditioning Co. v. NLRB*, 547 F.2d 1178, 1189 (2d Cir. 1976); emphasis in original). "The second element relates to the *purpose* of the union's conduct: whether 'under all the surrounding circumstances, the Union's objective was preservation of work for [the boycotted or threatened employer's] employees . . . or whether the . . . [union's activities] were tactically calculated to satisfy union objectives elsewhere.'" *Id.* (quoting *Nat'l Woodwork Mfrs. Ass'n v. NLRB*, 386 U.S. 612, 644 (1967); alterations, ellipses, emphasis in original). "The third element is whether the unlawful conduct was a proximate cause of the damage." *Id.* (citing *Landstrom v. Chauffeurs, Teamsters, Warehousemen & Helpers Local Union No. 65*, 476 F.2d 1189, 1195 (2d Cir. 1973)).

"At the summary judgment stage, a nonmoving party 'must offer some hard evidence showing that its version of the events is not wholly fanciful.'" *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998)). Here, Plaintiffs have not presented *any* affirmative evidence in support of their version of events. Instead, they apparently are relying on the allegations in their Amended Complaint and conclusory assertions in their other pleadings. However, the party opposing summary judgment "cannot defeat the motion by relying on the allegations in his pleading, . . . or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible[.]" *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(e); other citations omitted).

Even assuming for the sake of argument that Plaintiffs made an adequate showing on the first two elements, they cannot possibly demonstrate that "there is a causal nexus between the unlawful secondary activity and the injury [they] suffered . . . ." *Del Turco v.*

*Speedwell Design*, 623 F. Supp. 2d 319, 348 (E.D.N.Y. 2009) (citing *Feather v. United Mine Workers of Am.*, 903 F.2d 961, 966 (3d Cir. 1990); other citations omitted). "A causal nexus requires a showing that the unlawful activity was a 'substantial factor or material cause' of the plaintiff's injury." *Id.* (quoting *C & D Restoration v. Laborers Loc. 79*, 02 Civ 9448, 2004 WL 736915, at *5–6 (S.D.N.Y. Apr. 5, 2004)); *see also Feather*, 903 F.2d at 966 ("[S]ection 303 permits recovery only if the unlawful conduct itself 'materially contributed' to or was a 'substantial factor' in bringing about the injury.") (quotation and citation omitted; alteration in original).

Logically, for unlawful secondary conduct to have materially contributed to or been a substantial factor in bringing about an injury, it must have preceded that injury. *Cf. McAllister v. Queens Borough Pub. Libr.*, 309 F. App'x 457, 458 (2d Cir. 2009) (unpublished opn.) (plaintiff failed to state a claim for retaliation because the only adverse employment action by his employer was plaintiff's termination, which occurred *before* his protected activity) (citing *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (stating requirements for a *prima facie* case of retaliation including alleging facts that demonstrate a causal connection between the alleged adverse action and the protected activity)).

However, as discussed above, the only instances of Rothfuss' alleged unlawful conduct that occurred *before* the Funds instituted the EDPA lawsuits in 2009 are outside the LMRA § 303 statute of limitations and may not be considered because they are untimely. Further, the only instances of Rothfuss' alleged misconduct that are within the statute of limitations occurred long *after* the Funds sued Plaintiffs in the EDPA. It defies logic to argue that events *after* the alleged injury occurred were a "material cause" of, or

"substantial factor in bringing about," that injury. As for the Crane Hogan judgment, that lawsuit was filed in 2015; as discussed above, all instances of Rothfuss' conduct that occurred prior to September 19, 2015, are outside the LMRA § 303 statute of limitations.

The Court's conclusion as to causation is the same even if it considers all allegations—both timely and untimely—concerning Rothfuss' alleged activities. It is undisputed that Rothfuss was not, and is not, a trustee, employee, representative, or agent of any of the Funds, making it highly unlikely that the Funds were even aware of Rothfuss' existence.  It strains credulity that the Funds decided to sue Plaintiffs to recover unpaid pension contributions simply because, according to Plaintiffs, Rothfuss disliked Goetting personally. Rather, as the EDPA judgments make clear, *see*, *e.g., Elevator Guild II*, 2013 WL 271888, at *3–4, the Funds instituted those lawsuits because Plaintiffs violated the CBA and ERISA by failing to make required contributions on behalf of their employees to pension funds. In other words, Plaintiffs' failure to remit the required contributions, "standing alone," *Feathers*, 903 F.2d at 966, caused the Funds to seek and obtain the EDPA judgments against Plaintiffs. Clearly, the materiality test is not met in such circumstances. *See id.* ("[W]hen '[the lawful] objectives, standing alone, would have caused the strike, but the unlawful objective, standing alone, would not,' the materiality test is not met.") (some internal quotation marks and quotation omitted).

Similarly, the materiality test is not met regarding the Crane Hogan judgment. The Guild, and later Omni, executed confessions of judgment stating that Crane Hogan commenced the action against them "due to [the Guild]'s breach of the written agreement" between them. ECF No. 10-3 at 7–8, ¶ 5(c). In other words, Plaintiffs have acknowledged that Rothfuss' conduct was not a "material cause" of, or "substantial factor in bringing

about," the Crane Hogan lawsuit and subsequent judgment. Because Plaintiffs cannot establish causation on the present record, the LMRA § 303 claim fails as a matter of law.

### E.  Additional Grounds for Dismissing the LMRA § 301 and § 303 Claims Against IUEC and Rothfuss

As the Funds/Union Defendants note, Plaintiffs' Amended Complaint does not allege any specific actions or omissions by IUEC. Instead, it merely asserts that IUEC is "liable for Defendant Rothfuss' conduct under the doctrine of respondeat superior," and that Rothfuss was "acting within the scope of his employment" as the business manager/financial secretary of IUEC's Rochester-based union affiliate, Local 27.  *See* Am. Compl. ¶¶ 45, 48. Goetting asserts that his "primary antagonist is Defendant Rothfuss, who *happens* to be an official with the local affiliate of the . . . IUEC . . . , but is mainly acting as an individual who has been using his position with the Local affiliate to harm me, my family and my business." ECF No. 39 ¶ 3 (capital letters omitted; emphasis in original).

"It is well settled that an international union is not vicariously liable for the acts of a local union without an agency relationship between the international and the local union." *Campbell v. Int'l Bhd. of Teamsters*, 69 F. Supp. 2d 380, 386 (E.D.N.Y. 1999) (citing *Carbon Fuel Co. v. United Mine Workers*, 444 U.S. 212, 216–18 (1979)); *see also Carbon Fuel Co.*, 444 U.S. at 216-17 ("[T]to effectuate § 301(a), the Taft-Hartley Act provided in § 301(b) that a union 'shall be bound by the acts of its agents,' and in § 301(e) provided that the common law of agency shall govern 'in determining whether any person is acting as an 'agent' of another person.'"). "[C]ommon law principles of agency . . . [provide that] an agent is one who agrees to act on behalf of another, subject to the other's

control." *Campbell*, 69 F. Supp. 2d at 386 (citing Restatement (Second) of Agency §§ 219–237 (1958)).

"[A]n agency relationship is not inherent in the mere affiliation between the international and local unions or by the international's oversight of the local: '[I]t is well-settled that the mere exercise of supervisory powers is insufficient to render the affiliate union an agent of the international.'" *D'Onofrio v. City of New York*, No. 07-CV-0731 (CBA), 2007 WL 2994269, at *2–3 (E.D.N.Y. Oct. 11, 2007) (quoting *Rodonich v. House Wreckers Union Local 95 of Laborers' Int'l Union*, 817 F.2d 967, 974 (2d Cir. 1987); further citation omitted)); *see also Perez v. Int'l Bhd. of Teamsters*, No. 00CIV1983, 2002 WL 31027580, at *5 (S.D.N.Y. Sept. 11, 2002) ("Generally, an international union does not control the actions of its local unions.").

Indeed, absent an agency relationship, "[a]n international union has no independent duty to intervene in the affairs of its local chapters, even where the international has knowledge of the local's unlawful acts." *Phelan*, 973 F.2d at 1061-62 (citing *Carbon Fuel Co.*, 444 U.S. at 217-18). Rather, for an international to be liable, "ratification of the local's acts [is] necessary[.]" *D'Onofrio*, 2007 WL 2994269, at *3 (citing *Rodonich*, 817 F.2d at 972–73). "[R]atification can only occur when the principal, having knowledge of the material facts involved in a transaction, evidences an intention to ratify it." *Breen Air Freight, Ltd. v. Air Cargo, Inc.*, 470 F.2d 767, 773 (2d Cir.1972).

Plaintiffs have not pointed to any facts suggesting the existence of an agency relationship between IUEC and Local 27 or IUEC and Rothfuss. *See, e.g.*, *D'Onofrio*, 2007 WL 2994269, at *3 (dismissing claim against international where plaintiff "failed to allege a single fact that would support his claim for liability;" the only paragraph

mentioning the international states that it "'is responsible for Local 638's actions,'" which was "merely a 'bare conclusion' that is not sufficient to state a claim for relief") (quoting *Leeds v. Meltz*, 85 F.3d 51, 56 (2d Cir. 1996)). To the contrary, the Amended Complaint and the Goetting Aff. imply that Rothfuss was a rogue actor, thereby undermining any claim that IUEC (or Local 27 for that matter) knew of the conduct attributed to Rothfuss, much less ratified it.

Furthermore, as the Funds/Union Defendants argue, Rothfuss is immune from liability under LMRA § 301. ECF No. 8-1 at 19.  In *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238 (1962), "the Supreme Court held that individual damage claims may not be maintained against union officials for acts that are undertaken on behalf of the union." *Peterson v. Kennedy*, 771 F.2d 1244, 1256 (9th Cir. 1985) (citing 370 U.S. at 247–49). Later, in *Complete Auto Transit, Inc. v. Reis*, 451 U.S. 401, 402 (1981), "the Supreme Court reaffirmed and extended" *Atkinson*'s holding, ruling that "that a damage claim may not be brought against individual union officers or members even if the individual's conduct was unauthorized by the union and was in violation of an existing collective bargaining agreement." *Id.* (citing 451 U.S. at 402, 415).

Federal courts "have read *Atkinson* to prohibit claims, both state and federal, tort and otherwise, against individuals who are employees of or acting as agents or representatives of their unions." *Id.* (citing, *inter alia*, *Universal Comms. Corp. v. Burns*, 449 F.2d 691, 693–94 (5th Cir. 1971) (*per curiam*) (LMRA § 301 forbids recovery of damages from individual union members "*even if the claim purports to be based exclusively on state law*" (emphasis in original)); *Gates*, 1988 WL 1953, at *5 (dismissing, as immune from suit, the business manager-financial secretary of the union and former

union president whom plaintiff had named as defendants in their capacities as union officers). Thus, regardless of how Rothfuss' alleged conduct is characterized, he is immune from liability. *See id.*

### F. There Are No Non-Preempted Claims Over Which to Exercise Supplemental Jurisdiction

As the Court noted in its previous Decision and Order, the Funds/Union Defendants assumed that Plaintiffs were relying on CPLR § 5404 as a basis to stay the EDPA judgments, even though Plaintiffs did not specifically cite that statutory provision. *See* Funds/Union Defs.' Mem. of Law in Opp'n to Remand and TRO/Preliminary Inj. at 11, ECF No. 11-3. CPLR § 5404 "provide[s] a judgment debtor in New York facing enforcement of the foreign judgment 'a forum to obtain a stay on the same terms and conditions as those relating to a New York judgment.'" *Evoy v. Amandio*, 932 N.Y.S.2d 874, 877 (Sup. Ct. 2011) (quoting *Pickwick Int'l v. Tomato Music Co.*, 462 N.Y.S.2d 781, 783 (Sup. Ct. 1983); citation omitted). The Court determined that, to the extent Plaintiffs were requesting a stay under that statutory section, the Court could exercise supplemental jurisdiction over it.

However, the Regan Decl., submitted after the Court's August 27, 2021 Decision and Order, expressly argues that CPLR Article 5400 has no applicability to this case because it cannot be used to enforce default judgments. *See* N.Y. Civ. Prac. Law & Rules § 5401 (for purposes of CPLR Article 54, a "foreign judgment" does not include a judgment "obtained by default in appearance, or by confession of judgment").[3] Thus, it does not

---

[3] Contrary to Plaintiffs' suggestion in the Regan Decl., the fact that CPLR § 5401 does not encompass default judgments does not assist them in their attempt to avoid enforcement of the EDPA judgments. Since the Funds/Union Defendants registered the EDPA judgments under 28 U.S.C. § 1963 and CPLR § 5018(b), CPLR § 5401 is inapplicable. *See Keeton v. Hustler Magazine, Inc.*, 815 F.2d 857, 860–61 (2d Cir. 1987) (finding that CPLR Article 54 provided an alternative procedure for registering foreign judgments but that

appear that Plaintiffs implicitly requested a stay under CPLR § 5404 as alternative to a stay under Rule 65.

In any event, the case law provides no basis for importing CPLR § 5404 to this federal court proceeding. *Milgram v. Orthopedic Assocs. Defined Contribution Pension Plan*, 666 F.3d 68, 78 (2d Cir. 2011) (rejecting argument that the district court erred in refusing to suspend enforcement of the judgment pursuant to either CPLR §§ 5239 and 5240; as they are "state procedural rules[,] they provide no substantive rights and therefore have no relevance to this proceeding in federal court"). Thus, even if Plaintiffs were asserting a claim under CPLR § 5404, it is not cognizable here. *See id.*

## CONCLUSION

For the reasons discussed above, the Court finds that the Funds/Union Defendants and Crane-Hogan have established that there is no issue of disputed fact and that they are entitled to summary judgment as a matter of law. Accordingly, the converted Motions to Dismiss, ECF Nos. 8 and 10, are granted, and the Amended Complaint, ECF No. 1-1, is dismissed with prejudice.  The Court will address the pending motion for sanctions pursuant to Rule 11 (ECF No. 19) in a separate decision and order.

**IT IS SO ORDERED.**

DATED:      January 3, 2022
                   Rochester, New York

*Charles J. Siragusa*
CHARLES J. SIRAGUSA
United States District Judge

_____

both procedures remained available); *Reefer Tek LLC v. El Dorado Trailer Leasing*, LLC, No. 17 CIV. 1809 (ER), 2019 WL 5727315, at *2 (S.D.N.Y. Nov. 5, 2019) (defendant previously argued in state court that a Wisconsin default judgment should not be entitled to full faith and credit under CPLR § 5401; district court noted that CPLR § 5401 would be inapplicable, given that defendant chose to register the Wisconsin judgment using 28 U.S.C. 1963 and CPLR § 5018(b) (citation omitted). In other words, the combination of these statutes permitted Plaintiffs to enforce the federal judgment in New York without need to resort to CPLR Article 54. *See id.*; *Cappiello v. ICD Pubs.*, 868 F. Supp. 2d 55, 61 (E.D.N.Y. 2012).