UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

OMNI ELEVATOR CORPORATION and
CHRISTIAN GOETTING,

DECISION AND ORDER
19-CV-6778-CJS

Plaintiffs,

-vs-

INTERNATIONAL UNION OF
ELEVATOR CONSTRUCTORS and its
LOCAL 27 AFFILIATE; ALAN
ROTHFUSS; CRANE-HOGAN
STRUCTURAL SYSTEMS, INC.;
TRUSTEES OF THE NATIONAL
ELEVATOR INDUSTRY PENSION,
HEALTH BENEFIT, EDUCATIONAL,
ELEVATOR INDUSTRY WORK
PRESERVATION FUNDS, ELEVATOR
CONSTRUCTORS ANNUITY AND
401(K) RETIREMENT PLAN;
DELAWARE ELEVATOR, INC.,

Defendants.

**APPEARANCES**

For Plaintiffs:                                John M. Regan, Jr., Esq.
                                               Dibble & Miller, P.C.
                                               55 Canterbury Rd.
                                               Rochester, NY 14607-3436

For Defendants International Union of           Jennifer A. Clark, Esq.
Elevator Constructors and its Local 27         Blitman & King LLP
Affiliate; Alan Rothfuss; the Trustees of the  Franklin Center, Suite 300
National Elevator Industry Pension, Health     443 North Franklin St.
Benefit Educational, Elevator Industry         Syracuse, NY 13204
Work Preservation Funds; and the
Elevator Constructors Annuity and 401(k)
Retirement Plan:

For Defendant Crane-Hogan Structural           Daniel P. Adams, Esq.
Systems, Inc.:                                 Adams Bell Adams, P.C.

1

28 East Main St., Suite 600
Rochester, NY 14614

## INTRODUCTION

On January 3, 2022, ECF No. 42, the Court granted summary judgment to the named defendants and dismissed the Amended Complaint ("Am. Compl."), ECF No. 1-1 at 18-30,[1] with prejudice. The only matter left to be resolved in this case is the Motion for Sanctions pursuant to Federal Rule of Civil Procedure 11 ("Rule 11") brought by defendants International Union of Elevator Constructors and its Local 27 Affiliate; Alan Rothfuss; the Trustees of the National Elevator Industry Pension, Health Benefit, Educational, Elevator Industry Work Preservation Funds; and the Elevator Constructors Annuity and 401(k) Retirement Plan (collectively, "Funds/Union Defendants"). ECF No. 19.  For the reasons discussed below, the Motion for Sanctions, ECF No. 19, is granted.

## BACKGROUND

The factual and procedural history has been set forth at length in the Court's previous Decisions and Orders and need not be repeated in detail here. *See* ECF No. 42 at 3–11; ECF No. 33 at 3–6. Briefly, Omni Elevator Corporation ("Omni") and Christian Goetting ("Goetting") (collectively, "Plaintiffs") brought this case in September 2019 in New York State Supreme Court, Monroe County, seeking to enjoin enforcement of two money judgments obtained by the Funds/Union Defendants in the Eastern District of Pennsylvania in 2010 and 2014 ("the EDPA judgments") for violations of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"); and a 2016 judgment

---

[1] Page citations refer to the pagination automatically generated by the CM/ECF system and located in the header of the document.

for breach of contract obtained by defendant Crane-Hogan Systems, Inc. ("Crane-Hogan") in New York State Supreme Court, Monroe County. Plaintiffs claimed that they were entitled to equitable indemnification from the Union because Alan Rothfuss ("Rothfuss"), the business manager of the Union's local affiliate, "engineered" the judgments because he had a personal vendetta against Goetting.

The Funds/Union Defendants, with Crane-Hogan's consent, removed the state court action to this Court. Plaintiffs sought remand and a temporary restraining order/preliminary injunction, which this Court denied. The Funds/Union Defendants and Crane-Hogan filed motions to dismiss, which the Court converted to summary judgment motions. Plaintiffs did not meaningfully oppose summary judgment and instead requested that the matter be referred to mediation. As noted above, the Court granted summary judgment and dismissed the Amended Complaint.

The Funds/Union Defendants' Motion for Sanctions, ECF No. 19, is supported by the Affidavit of Andrew Kelser, Esq. ("Kelser") with Exhibits, ECF No. 19-1; the Affidavit of Jennifer A. Clark, Esq. ("Clark"), with Exhibits, ECF No. 19-2; and a Memorandum of Law in Support, ECF No. 19-3. Plaintiffs filed a Memorandum of Law in Opposition on December 19, 2019, ECF No. 22, characterizing the Funds/Union Defendants' motion as itself "sanctionable,"  rearguing the merits of their case and their then-pending remand motion, and demanding an award of attorney's fees under 28 U.S.C. § 1447(c). The Funds/Union Defendants filed a Reply on December 26, 2019. ECF No. 24. The motion was submitted without oral argument on January 6, 2020. ECF No. 26.

**DISCUSSION**

I. **Legal Principles Relevant to Rule 11 Motions**

    A. **Scope of Rule 11**

Rule 11 provides in relevant part that "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it,'" an attorney or unrepresented party "certifies" the following:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b)(1)-(3).

"If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1); *see also*, *e.g.*, *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 57 (2d Cir. 2000). The Court may act on its own initiative or on motion by the aggrieved party. Fed. R. Civ. P. 11(c)(2), (3). "A sanction imposed under . . . [R]ule [11] must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Appropriate sanctions "may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and

4

warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.*

Sanctions may be imposed not only against attorneys, but also against represented parties, where the party "is responsible for the violation." Fed. R. Civ. P. 11(c)(1); *see also, S. Pac. Shipping Co. Inc. v. Redi-Fresh Produce Inc.*, No. 14cv04157 (LAK)(AJP), 2014 WL 6968039, at *11 (S.D.N.Y. Dec. 9, 2014) ("Sanctions frequently are assessed against both represented parties and their attorneys when the Court finds the party has acted in bad faith, or proceeded with an improper purpose."). However, sanctions for a violation of Rule 11(b)(2) may not be imposed against a represented party. Fed. R. Civ. P. 11(c)(5)(A). When sanctions are imposed against an individual attorney, "[a]bsent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." Fed. R. Civ. P. 11(c)(1).

### B.  Applicability of Rule 11 to Pleadings Removed from State Court

As amended in 1993, Rule 11 now "allow[s] a district court to impose sanctions not only for a party's 'signing' a paper filed with the district court, but for 'presenting to the court (whether by signing, filing, submitting, or later advocating)' a document that is otherwise sanctionable." *Dellefave v. Access Temporaries, Inc.*, No. 99 CIV. 6098 (RWS), 2001 WL 286771, at *5 (S.D.N.Y. Mar. 22, 2001) (quoting Fed. R. Civ. P. 11(b) (as amended eff. Dec. 1, 1993)). "The Advisory Committee Notes explain that 'if after a notice of removal is filed, a party urges in federal court the allegations of a pleading filed in state court (whether as claims, defenses, or in disputes regarding removal or remand), it would be viewed as 'presenting'—and hence certifying to the district court under Rule 11—those

allegations.'" *Id.* (quoting *Buster v. Greisen*, 104 F.3d 1186, 1190 n.4 (9th Cir. 1997) (affirming imposition of sanctions by federal removal court for pursuing allegations in complaint first filed in state court), *cert. denied*, 522 U.S. 981 (1997)).

Furthermore, the 1993 Advisory Committee Notes to Rule 11 specifically state that "a litigant's obligations with respect to the contents of [papers filed with the court] are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." *Loving v. Pirelli Cable Corp.*, 11 F. Supp. 2d 480, 493 (D. Del. 1998) (quotation omitted), *aff'd*, 178 F.3d 1279 (3d Cir. 1999).

### C.  Safe Harbor Provision

For the imposition of sanctions to comply with due process, "[a]t a minimum," the subject of a sanctions motion must "be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense." *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999) (citations omitted). "[O]nly conduct explicitly referred to in the instrument providing notice is sanctionable." *Id.* (citation omitted). "This notice requirement permits the subjects of sanctions motions to confront their accuser and rebut the charges leveled against them in a pointed fashion." *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 389 (2d Cir. 2003).

With regard to Rule 11 in particular, the statutory text states "that a party's motion initiating the sanctions process 'shall describe the specific conduct alleged to violate subdivision (b).'" *Id.* (quoting Fed. R. Civ. P. 11(c)(1)(A)).  When Rule 11 sanctions are

initiated by a party's motion, the statute "gives the subject the opportunity to withdraw the potentially offending statements before the sanctions motion is officially filed," and thereby avoid sanctions. *Id.* (citing Fed. R. Civ. P. 11(c)(1)(A) (providing a "safe harbor" by requiring the motion for sanctions to be served twenty-one days before it can be filed with the court)).

Rule 11's safe harbor provision articulates a "strict procedural requirement." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012). However, perfect compliance may be excused where there is "no indication that [a party] would have corrected or amended its frivolous arguments even had it been given the opportunity." *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 142 (2d Cir. 2002).

### D.  Standard for Evaluating Alleged Violations of Rule 11

Rule 11 "explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Four Keys Leasing & Maintenance Corp. v. Simithis*, 849 F.2d 770, 774 (2d Cir. 1988) (quoting *Eastway Constr. Corp. v. City of N.Y.*, 762 F.2d 243, 253 (2d Cir. 1985)). "'[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness,' *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000), and is not based on the subjective beliefs of the person making the statement." *Storey*, 347 F.3d at 387 (alteration in original). It is not "enough for an attorney to claim that he acted in good faith, or that he was personally unaware of the groundless nature of an argument or claim." *Id.* (quoting *Eastway Constr. Corp.*, 762 F.2d at 253).

## II.     Application of the Rule 11 Standard to the Motion for Sanctions

### A. The Funds/Union Defendants Complied with the Safe Harbor Provision

On September 26, 2019, the attorneys for the Funds/Union Defendants' attorneys sent letters to Plaintiffs' counsel, John M. Regan, Jr. ("Regan"), detailing the myriad defects and inaccuracies in his legal arguments and factual contentions and explaining the insurmountable procedural and substantive hurdles faced by the Complaint. *See* ECF No. 1-1 at 52–56 (Letter dated 9/26/19 from Kelser to Regan); ECF No. 1-1 at 66–69 (Letter dated 9/26/19 from Clark to Regan). The Kelser letter stated that the Funds/Union Defendants intended to pursue Rule 11 sanctions against him for "initiating legal action without a legitimate and reasonable basis," in violation of Rule 11, unless he withdrew the Complaint within five days. ECF No. 1-1 at 52.   Similarly, the Clark letter informed Regan that his Complaint did not comply with Rule 11 because it was presented for an improper purpose; the claims alleged were not warranted by existing law or a reasonable argument for extending, modifying, or reversing existing law; and the factual contentions had no evidentiary support. *Id.* at 68; *see also id.* at 66 (stating that if Regan had conducted the "required reasonable inquiry," he would have "learned that most of the allegations in [the] Complaint are, in fact, false and [the] Complaint is without merit").

Regan, however, filed an Amended Complaint on October 6, 2019, that was not meaningfully different than the original Complaint. ECF No. 1-1 at 18–30.

On October 25, 2019, Clark served Regan with a draft copy of the "Defendant Funds' and Defendant Union's Rule 11 Motion for Sanctions," which, in compliance with the safe harbor provision, was not filed with the Court. Clark stated that the motion "will be filed in twenty-two (22) days absent withdrawal of the Amended Complaint and,

specifically, [Plaintiffs'] claim to stay enforcement of the Defendant Funds' judgments." ECF No. 19-2 at 32.

Regan did not withdraw the Amended Complaint. Clark filed the instant Motion for Rule 11 Sanctions on December 4, 2019, over a month after serving the draft motion. ECF No. 19. It is clear that the Funds/Union Defendants have demonstrated literal compliance with Rule 11's safe harbor provision. Accordingly, there are no procedural obstacles to the imposition of sanctions.

### B. Plaintiffs' Legal Position Was Objectively Unreasonable and Violated Rule 11(b)(2)

"The 1993 Advisory Committee Note explains that Rule 11(b)(2) 'establishes an objective standard, intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments.'" *Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 166 (2d Cir. 1999) (quoting Fed. R. Civ. P. 11 advisory committee note to 1993 amendments).  The Second Circuit has held that "an argument constitutes a frivolous legal position for the purposes of Rule 11 sanctions, if, under the objective standard of reasonableness, it is clear . . . that there is no chance of success and no reasonable argument to extend, modify, or reverse the law as it stands." *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 25 (2d. Cir. 1995) (quoting *Caisse Nationale de Credit Agricole-CNCA v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir. 1994); ellipsis in original; internal quotations and citations omitted in original). "Accordingly, courts in the Second Circuit have found sanctions appropriate in cases where a plaintiff files a claim that is clearly deficient and where he advances no plausible argument in favor of validity." *de la Fuente v. DCI Telecommunications, Inc.*, 259 F. Supp. 2d 250, 262 (S.D.N.Y. 2003) (collecting

cases).  As discussed below, the objective unreasonableness of Regan's legal arguments has been apparent since this lawsuit's inception.

First, in their September 26, 2019, letters, Kelser and Clark explained the numerous reasons why Plaintiffs' position was "without a legitimate and reasonable basis" in the law. ECF No. 1-1 at 52.  For instance, Kelser correctly explained that employers, like the Elevator Guild (Omni's predecessor in interest), and their officers and owners, like Goetting, only have two defenses they may assert against benefit funds:  the contributions are illegal, or the collective bargaining agreement ("CBA") is void, not merely voidable. ECF No. 1-1 at 55 (citations omitted). Thus, Plaintiffs' allegations of misconduct by Rothfuss were not a legal defense to the Funds' lawsuits in the EDPA to collect unpaid employee contributions due under the 2007 CBA. *Id.*

In her September 26, 2019, letter, Clark correctly pointed out that Plaintiffs did not have any colorable arguments for blocking enforcement of the EDPA judgments, which were properly registered with this Court and the County Clerks' Offices pursuant to 28 U.S.C. § 1963 and New York Civil Practice Law and Rules ("CPLR") § 5108(b). ECF No. 1-1 at 67 (citations omitted). In addition, Clark accurately noted that Plaintiffs' allegations sounding in state-law tort were barred by the applicable state statutes of limitations and, moreover, were preempted by the National Labor Relations Act ("NLRA") and Labor Management Relations Act ("LMRA") §§ 301 and 303. *Id.* at 67-68 (citations omitted).

Undeterred, Regan wrote a letter to Kelser and Clark dated October 2, 2019, ECF No. 1-1 at 72–74, "disagree[ing] in the strongest possible terms with [their] efforts to characterize the cause of action . . . as 'frivolous', and point[ing] out that the majority of [their] objections [were] based on a complete misapprehension of the nature of the claim."

10

*Id.* at 72. According to Regan, he asserted a single cause of action—equitable indemnification—and, at least as to the 2014 judgment, the six-year statute of limitations had not expired. *Id.* at 72–73. Regan thus conceded that a challenge to the 2010 judgment based on a theory of equitable indemnification was untimely. Nonetheless, he insisted there was a "different and more serious problem" with the 2010 judgment, namely, that it could not be enforced under CPLR § 5401 because it was a default judgment. ECF No. 1-1 at 73.

Regan also insisted that since Plaintiffs raised only a cause of action under New York state law, there was no basis for federal subject matter jurisdiction. Therefore, he dismissed the preemption issues out of hand and predicted that a removal motion would fail. *See id.*

Finally, Regan questioned whether there was any 2007 CBA between the Guild and the Union because, under his interpretation of a New York Court of Appeals case, *Martin v. Curran*, 303 N.Y. 276 (1951), the Union had no "juridical existence" and could not enter into a contract. ECF No. 1-1 at 73. Thus, Regan concluded, enforcement of the EDPA judgments, which allegedly were premised on a contract involving a non-existent entity (the Union), violated public policy in New York. *Id.* at 74 (citing *Palladino v. CNY Centro, Inc.*, 23 N.Y.3d 140, 151 (2014)).

By letter dated October 25, 2019, ECF No. 19-2 at 32-38, Clark debunked each of Regan's legal theories. First, Clark repeated the many reasons why Plaintiffs could not avoid enforcement of the EDPA judgments or obtain a stay, temporary restraining order, or preliminary injunction under either federal or state law. *See id.* at 32-36 (citations omitted). For instance, as previously stated, the EPDA judgments were properly

registered in accordance with 28 U.S.C. § 1963 and enforceable in New York because the time for filing a notice of appeal to the Third Circuit expired years ago. *Id.* at 33 (citing 28 U.S.C. § 1963 ("A judgment in an action for the recovery of money or property entered in any . . . district court . . . may be registered by filing a certified copy of the judgment in any other district . . . when the judgment has become final by appeal or expiration of the time for appeal. . . . A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.")); *see* Fed. R. App. P. 4(a)(1)(A) (a party must file a notice of appeal within 30 days after the date the judgment is entered); *Bowles v. Russell*, 551 U.S. 205, 209 (2007) (filing deadlines under Fed. R. App. P. 4 are "'mandatory and jurisdictional'") (quotation omitted).

Further, Clark correctly explained, resort to CPLR Article 5400 was unnecessary because the Funds could, and did, utilize the sequential application of 28 U.S.C. § 1963 and CPLR § 5018(b) to register the judgments. ECF No. 19-2 at 34-35 (citations omitted); *see also* 28 U.S.C. § 1963 ("The procedure prescribed under this section is *in addition to* other procedures provided by law for the enforcement of judgments.") (emphasis supplied). In other words, Regan's assertion that CPLR § 5401 could not be used to enforce a default judgment—while true—was utterly immaterial in this case.

Clark then accurately outlined why Regan's arguments based on *Martin* were legally untenable and rested on a misreading of *Palladino*. ECF No. 19-2 at 37–38. The so-called *Martin* rule bars state-law claims against unincorporated associations, including unions and their officers, unless the plaintiff party can show that every member of the

union authorized or ratified the actions of the union and its agents. 303 N.Y. at 280. The *Martin* court reasoned that

> [a] voluntary, unincorporated membership association [such as a union] is neither a partnership nor a corporation. It is not an artificial person, and has no existence independent of its members. No agency of one member for another is implied. A part of the members of a voluntary organization cannot bind the others without their consent before the act which it is claimed binds them is done, or they, with full knowledge of the facts, ratify and adopt it.

*Id.*

"Thus, although New York law permits a plaintiff to sue a union by naming its president or treasurer as a defendant, rather than naming the entire union membership, *see* N.Y. Gen Ass'ns Law § 13," the *Martin* rule "'has limited such suits against association officers, whether for breaches of agreements or for tortious wrongs, to cases where the individual liability of every single member can be alleged and proven.'" *Bldg. Indus. Fund v. Loc. Union No. 3, Int'l Bhd. of Elec. Workers*, AFL-CIO, 992 F. Supp. 192, 194 (E.D.N.Y. 1996) (quoting *Martin*, 303 N.Y. at 302), *aff'd* 141 F.3d 1151 (2d Cir. 1998). Clark correctly explained that even assuming the claim against the Union was simply an equitable indemnification claim, it was barred by the *Martin* rule because Regan had not alleged and could not show that every single member of the Union approved of Rothfuss' alleged conduct. ECF No. 19-2 at 37.

Regan posited that this case might precipitate the *Martin* rule's demise, notwithstanding the fact that the New York Court of Appeals had been squarely presented with the opportunity to overrule *Martin* just five years earlier in *Palladino* but declined to do so. *See Palladino,* 23 N.Y.3d at 148-51. It is true, as Regan noted, that the Court of Appeals in *Palladino* "question[ed] the continued utility or wisdom of the *Martin* rule." *Id.* at 150–51. Nonetheless, that court determined that overruling *Martin* would not be

appropriate. It explained that doing so would require the overruling of its precedents involving statutory interpretation, which "'are entitled to great stability.'" *Id.* at 151 (quotation omitted). Moreover, the New York Court of Appeals noted, the fact that the state legislature had failed to take any action in response to *Martin* implied that the court's statutory interpretation properly reflected legislative intent. *Id.*

After reviewing *Martin* and *Palladino*, it should have been apparent to Regan that Plaintiffs' case does not "squarely present" the *Martin* issue, and that the New York Court of Appeals is not inclined to revisit this issue anytime soon. Regan's belief that this case would make it to the New York Court of Appeals *and* lead to the *Martin* rule being jettisoned is, quite frankly, untethered to reality.

Furthermore, contrary to Regan's insinuation, the *Martin* rule does not modify or nullify the LMRA, as Clark correctly pointed out in her letter.  ECF No. 19-2 at 37. Nowhere in *Martin* or *Palladino* did the New York Court of Appeals say that a union "does not formally exist" and, therefore, cannot enter into a collective bargaining agreement. Regan has identified no statutory or decisional law for this proposition, and the Court has found none. This dearth of legal support is unsurprising since Regan's argument effectively would upend the 75-year-old LMRA and decades of caselaw interpreting and applying it. *See*, *e.g.*, *Textile Workers Union of America v. Lincoln Mills of Ala.*, 353 U.S. 448, 453-54 (concluding, after examining LMRA § 301's legislative history, Congress intended to make collective bargaining agreements between unions and employers "binding on both parties" and to provide for a "procedure for making such agreements enforceable in the courts by either party") (quotation and quotation marks omitted); *Application of Warchol*, 195 N.Y.S.2d 317, 318, 319 (Sup. Ct. 1959) (two unions entered

into collective bargaining agreements; "[b]oth contracting parties were unincorporated associations" and "[a]ll parties to these proceedings concede that the labor agreements involved here in are governed by the [LMRA]. . ." ).

The Court has not reiterated every flaw in Regan's legal position that Clark and Kelser exhaustively detailed in in their letters. Nonetheless, the Court's research revealed no basis to disagree with Clark and Kelser on any point. Indeed, the Court explicitly adopted most of the Funds/Union Defendants' arguments in dismissing the Amended Complaint.  Because "it is clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands[,]" *Gurary v. Winehouse*, 235 F.3d 792, 798 (2d Cir. 2000), Regan violated Rule 11 by commencing and continuing this action.

### C.  The Key Factual Contentions in the Amended Complaint Are Objectively Unreasonable and Violate Rule 11(b)(3)

Rule 11(b)(3) requires that all "factual contentions have evidentiary support." A pleading violates Rule 11(b)(3) where, "'after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact. . . .'" *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002) (quotation omitted).

"An attorney is entitled to rely on his or her client's statements as to factual claims when those statements are objectively reasonable." *S. Pac. Shipping Co. Inc. v. Redi-Fresh Produce Inc.*, No. 14 CIV. 4157 LAK AJP, 2014 WL 6968039, at *9 (S.D.N.Y. Dec. 9, 2014) (citing *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1329-30 (2d Cir.1995) (stating that the current version of Rule 11 "requires only that an attorney conduct 'an inquiry reasonable under the circumstances' into whether 'factual contentions have evidentiary support'") (quoting Fed. R. Civ. P. 11(b) & (b)(3)); other citation omitted).

While "a plaintiff is not required to know at the time of pleading all facts necessary to establish the claim[,]" *Commercial Cleaning Servs., LLC v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 386 (2d Cir. 2001) (citation omitted), "the creativity of an attorney may not transcend the facts of a given case[.]" *Levine v. Fed. Deposit Ins. Corp.*, 2 F.3d 476, 479 (2d Cir.1993) (citation to record omitted).

According to the Amended Complaint, Rothfuss' malfeasance against Goetting was the *sole* factor in causing the Funds and Crane-Hogan to obtain the various judgments against them. *See* Am. Compl. ¶ 2 (alleging that Rothfuss "engaged in a pattern of outrageous and conscious shocking behavior designed to disrupt and destroy Plaintiffs' business and livelihood[,]" by making "grossly defamatory communications to Plaintiffs' customers, contractors and associates among others *in order to engineer roughly $300,000 in: a) judgments* . . . in the United States District Court for the Eastern District of Pennsylvania in favor of the [Funds]; and b) a judgment of similar size in Monroe County Supreme Court in favor of Defendant Crane-Hogan") (capital letters omitted; emphasis supplied).

However, after receiving the September 26, 2019, letters from the Funds/Union Defendants' attorneys, a lawyer could not have continued to hold a reasonable belief that the core factual tenet of the Amended Complaint—that Rothfuss "engineered" the judgments against Plaintiffs—was well grounded in fact. For instance, Kelser explained that Rothfuss is not and never has been a trustee, fiduciary, or representative of the Funds, such that there was "no basis . . . to suggest that any conduct by" Rothfuss "contributed to the [Funds] obtaining valid judgments against" Plaintiffs. ECF No. 1-1 at 54–55. This Court subsequently agreed. *See* ECF No. 42 at 23 ("It is undisputed that

Rothfuss was not, and is not, a trustee, employee, representative, or agent of any of the Funds, making it highly unlikely that the Funds were even aware of Rothfuss' existence."). Indeed, the Court found, "[i]t strain[ed] credulity that the Funds decided to sue Plaintiffs to recover unpaid pension contributions simply because, according to Plaintiffs, Rothfuss disliked Goetting personally." *Id.*

Rather, as Kelser explained to Regan, the Funds brought suit and obtained the two judgments in the EDPA entirely because the Guild failed to pay and report contributions for covered work periods and because Goetting exercised control over and discretion over the Guild's assets. *See* ECF No. 1-1 at 53–54, 55. As the district court in the 2014 EDPA judgment determined, the following facts, among others, were "uncontested by virtue of Goetting's failure to respond" to the Funds' requests for admissions and motion for summary judgment: "From July 2007 through November 2010, Goetting signed and submitted to the Funds the required reports regarding the number of hours worked by the Guild employees, but he failed to remit the corresponding payments for many of those months"; and "[s]ince November 2010, the Guild has failed to report hours worked by its covered employees, as well as failing to remit payments." ECF No. 1-1 at 127, 128 (footnotes omitted).

As this Court previously found, the EDPA judgments "make clear" that "the Funds instituted [the EDPA] lawsuits because Plaintiffs violated the CBA and ERISA by failing to make required contributions on behalf of their employees to pension funds. In other words, Plaintiffs' failure to remit the required contributions, 'standing alone,' . . . caused the Funds to seek and obtain the EDPA judgments against Plaintiffs" caused the Funds to seek and obtain the EDPA judgments against Plaintiffs." ECF No. 42 at 23 (citation and

internal quotation omitted). Therefore, Plaintiffs' belief that Rothfuss played any part in the Funds' lawsuits, much less "engineered" the EDPA judgments, was and is factually baseless and should have been obvious upon a review of the EDPA judgments.

Moreover, Plaintiffs' assertion that Rothfuss "caused" the judgments runs counter to the very definition of "cause." As relevant here, cause may be defined as "[e]ach separate antecedent of an event" or "[s]omething that precedes and brings about an effect or a result." *Cause*, BLACK'S LAW DICTIONARY (6th ed. 1990). All but two of the instances of alleged misconduct by Rothfuss in the Amended Complaint *post-date* the Funds' institution of both lawsuits in the EDPA. By definition, then, none of those instances can be a "cause" of the EDPA judgments. As the Court explained in dismissing the LMRA § 303 claim, "[l]ogically, for unlawful secondary conduct to have materially contributed to or been a substantial factor in bringing about an injury, it must have *preceded* that injury." ECF No. 42 at (emphasis supplied). The objective unreasonableness of asserting a causal relationship between the EDPA judgments and Rothfuss's alleged conduct *postdating* those judgments should have been patently obvious to Regan.

In any event, the only two alleged actions by Rothfuss that preceded the Funds' institution of the EDPA lawsuits occurred on unspecified dates in 2007 and 2008. Accordingly, they are well outside the six-year statute of limitations that Regan contends applies to the purported equitable indemnification claim. Even if they were timely, the 2007 and 2008 incidents were wholly unrelated to the Funds or Plaintiffs' obligations under ERISA and the 2007 CBA.

18

With regard to the Crane-Hogan judgment, it is true that Plaintiffs have alleged at least some conduct by Rothfuss that preceded that judgment. Nonetheless, the contention that Rothfuss somehow "engineered" that judgment is not just objectively unreasonable, it is contrary to the Elevator Guild's sworn affidavit admitting that it alone was responsible for the judgment obtained by Crane-Hogan. *See* ECF No. 42 at 23 ("The Guild, and later Omni, executed confessions of judgment stating that Crane-Hogan commenced the action against them 'due to [the Guild]'s breach of the written agreement' between them.") (quoting ECF No. 10-3 at 7–8, ¶ 5(c)).

The factual infirmities discussed above were abundantly clear at the time Regan commenced the state court action. Moreover, Regan cannot contend that discovery would have yielded any information to substantiate the Amended Complaint's fanciful narrative. This is because he failed to oppose the summary judgment motions by submitting a "properly supported" request under Rule 56(f), stating that Plaintiffs "need[ed] discovery to be able to present facts needed to defend the motion," *Com. Cleaning Servs., L.L.C., Inc.*, 271 F.3d at 386. Indeed, Regan's muteness in the face of the defendants' summary judgment motions proves that Plaintiffs' factual contentions were "utterly lacking in support[,]" *Storey,* 347 F.3d at 388 (citation omitted), and that there was no likelihood of discovering evidentiary support for them. As such, they are sanctionable under Rule 11(b)(3).

### D.  The Court Declines to Find a Violation of Rule 11(b)(1)

The Funds/Union Defendants assert that sanctions are warranted under Rule 11(b)(1) because Plaintiffs commenced and continued this action for an improper purpose—to cause unnecessary delay in the Funds/Union Defendants' enforcement of

the EDPA judgments. In response, Plaintiffs broadly accuse the Funds/Union Defendants of "dilatory and abusive litigation tactics" and assert that they should be sanctioned instead. ECF No. 22 at 1.

"Rule 11 sanctions may be imposed upon a represented party when the party 'had actual knowledge that the filing of the paper constituted wrongful conduct, e.g. the paper made false statements or was filed for an improper purpose.'" *Brown v. Artus*, 647 F. Supp. 2d 190, 205 (N.D.N.Y. 2009) (quoting *Calloway v. Marvel Entm't Grp.*, 854 F.2d 1452, 1474 (2d Cir. 1988), *rev'd on other grounds sub nom. Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120 (1989)). On the present record, it is unclear to the Court that Plaintiffs had the requisite "actual knowledge" that signing the Complaint was wrongful under Rule 11. In such cases, the Second Circuit has stated, the party itself should not be sanctioned. *See Calloway v. Marvel Ent. Grp., a Div. of Cadence Indus. Corp.*, 854 F.2d 1452, 1474–75 (2d Cir. 1988) ("[W]hen a party has participated in the filing of a paper signed by the attorney or has signed a paper himself but did not realize that such participation or signing was wrongful" under Rule 11, "then sanctions against the party are . . . not appropriate."), *rev'd in part on other grounds sub nom. Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120 (1989).  Because the Court is not inclined to sanction Plaintiffs personally, it need not proceed further with analyzing whether Plaintiffs violated Rule 11(b)(1).

With regard to Regan, the Funds/Union Defendants' argument is that he commenced this action to cause unnecessary delay in their enforcement of the EDPA judgments, which is demonstrated by the fact that he filed a factually and legally frivolous Complaint. The Funds/Union Defendants' Rule 11(b)(1) argument effectively duplicates

their Rule 11(b)(2) and (b)(3) arguments. Thus, in finding improper purpose under subsection (b)(1), the Court would have to rely on the same evidence that supported the findings of Rule 11(b)(2) and (b)(3) violations. The Court has not found any case law from this Circuit or beyond supporting such a practice. *See*, *e.g.*, *Parker v. Diverse Staffing Georgia, Inc.*, No. 120CV01913TWTRGV, 2020 WL 10575029, at *16 (N.D. Ga. Dec. 23, 2020), *report and recommendation adopted*, No. 1:20-CV-1913-TWT, 2021 WL 3367263 (N.D. Ga. Jan. 12, 2021) ("'Improper purpose may be shown by excessive persistence in pursuing a claim or defense in the face of repeated adverse rulings,' *Lomax v. Ruvin*, CASE NO. 09-23293-CIV-UNGARO, 2011 WL 13267206, at *5 (S.D. Fla. Aug. 19, 2011), *adopted by* 2011 WL 13267163, at *1 (S.D. Fla. Sept. 22, 2011) (citation omitted), but an improper purpose 'may not be shown only by knowing pursuit of a meritless claim,' *Teno v. Iwanski*, 464 F. Supp. 3d 924, 953 (E.D. Tenn. 2020) (citation omitted).").

"In finding a Rule 11(b)(1) violation, courts . . . typically deem a party's purpose to be improper as a result of repeated filings or where evidence indicates an ulterior motive beyond the stated purpose of the filing." *Sec. & Exch. Comm'n v. Faulkner*, No. 3:16-CV-1735-D, 2018 WL 3708426, at *3 (N.D. Tex. Aug. 3, 2018). Here, the motive for filing the Complaint was apparent on its face—Regan sought to delay enforcement of the EPDA judgments until he could secure vacatur of them; there was no hidden motive. *Cf.*, *e.g.*, *Jordaan v. Hall*, 275 F. Supp. 2d 778, 786 (N.D. Tex. 2003) (finding that the plaintiff had filed her complaint intending to disrupt related, ongoing state proceedings and force the recusal of the state court judge; district court concluded that "[t]he timing, length, and content of this recusal motion indicate that the original complaint was filed in order to force [state court judge's] recusal on the basis of a carefully crafted conflict of interest").

Moreover, the filing of the Complaint did not suspend the enforceability of the EDPA judgments. The Court accordingly finds that the Funds/Union Defendants have not established a violation of Rule 11(b)(1) by Regan**.**

### E.  Type and Amount of Sanctions Warranted

Having found that subsections (2) and (3) of Rule 11(b) have been violated, the Court must determine whether it should order sanctions and if so, in what form and in what amount.  Clark, counsel of record for the Funds/Union Defendants, avers that during the period from September 20, 2019, through November 30, 2019, her firm incurred $32,586.70 in attorneys' fees and $830.10 in costs and disbursements. ECF No. 19-2 at 7, ¶¶ 10–12 (citing Exhibit E, ECF No. 19-2 at 48–68).  According to the contemporaneous timesheets submitted by Clark, her firm expended a total of 99.35 combined attorney and paralegal hours while defending the Funds/Union Defendants in connection with the state court action, removing the matter to this Court, addressing Plaintiffs' requests to remand and for injunctive relief, preparing the motion to dismiss, and preparing the sanctions motion. The attorneys and paralegals billed at $329 per hour and $176 per hour, respectively. *Id.*

The Court must be mindful that "the principal objective of the imposition of Rule 11 sanctions is not compensation of the victimized party but rather the deterrence of baseless filings and the curbing of abuses." *Caisse Nationale de Credit Agricole-CNCA v. Valcorp, Inc.*, 28 F.3d 259, 266 (2d Cir. 1994)).  In other words, "'Rule 11 is not a fee-shifting mechanism and does not create an entitlement' to attorney's fees[.]" *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Albany*, 369 F.3d 91, 97 (2d Cir. 2004) (quoting *Estate of Calloway v. Marvel Entertainment Grp.*, 9 F.3d 237, 241 (2d Cir. 1993)).

In addition, even "where the court decides that an award of attorney's fees is an appropriate sanction, 'a lodestar amount need not be routinely awarded.'" *Geiger v. Town of Greece,* No. 07-CV-6066 CJS, 2008 WL 728471, at *5 (W.D.N.Y. Mar. 18, 2008) (quoting *Eastway Constr. Corp.*, 821 F.2d at 122). "Instead, a court has 'discretion to award only that portion of a defendant's attorney fee thought reasonable to serve the sanctioning purpose of the Rule.'" *Id.* (quoting *Eastway Constr. Corp.*, 821 F.2d at 123).

After considering the facts and circumstances of this case, the Court finds that the requested amount of $33,416.80 is greater that "what [will] suffice[ ] to deter repetition of the conduct," Fed. R. Civ. P. 11(c)(4). Instead, the Court determines that $5,000.00 represents an amount that will fulfill Rule 11's deterrent purpose. *See id.* (finding that attorneys violated Rule 11(b)(2) and (b)(3) but concluding that an award of $25,257.69 in attorney's fees was not necessary to achieve Rule 11's deterrent effect; court awarded $5,000.00 instead).  As Regan has not articulated any "exceptional circumstances," his law firm must be held jointly responsible for his Rule 11 violations. *See* Fed. R. Civ. P. 11(c).

## CONCLUSION

For all the foregoing reasons, the Funds/Union Defendants' Motion for Rule 11 Sanctions, ECF No. 19, is granted to the extent that a monetary sanction, in the form of an award of attorney's fees in the amount of five thousand dollars ($5,000.00), is imposed against John M. Regan, Jr. and his law firm, Dibble & Miller P.C. The sanction shall be paid to the Funds/Union Defendants within thirty (30) days of the date of this Decision and Order.

IT IS SO ORDERED.

DATED:      March 15, 2022
            Rochester, New York

                                        CHARLES J. SIRAGUSA
                                        United States District Judge